In re David Ira PULLINS, Paula Ann Pullins, Debtors.

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY**

and

**Production Credit Association, Plaintiffs,**

v.

**David Ira PULLINS, Paula Ann Pullins, Defendants.**

Bankruptcy No. 3–86–00345(A).

United States Bankruptcy Court, S.D. Ohio, W.D.

Sept. 23, 1986.

Jennings W. Hurt, Jr., David M. Whittaker, Columbus, Ohio, for John Hancock Mut. Life Ins. Co.

Charles E. McFarland, Newton Falls, Ohio, for debtors.

Ray A. Cox, Dayton, Ohio, for Farm Credit Services, fka Miami Valley Production Credit Ass'n.

WILLIAM A. CLARK, Bankruptcy Judge.

This matter is before the court upon the motions of John Hancock Mutual Life Insurance Company ("John Hancock") and Production Credit Association of the Fourth District ("PCA") for relief from the automatic stay provided by 11 U.S.C. § 362 in order for the movants to foreclose upon property of the debtors, David and Paula Pullins.

## FACTS

From the evidence introduced at the hearing it appears that John Hancock is the holder of two mortgages against the farm land of the debtors. The first mortgage is in the amount of $498,039 and covers 399 acres of land. The second mortgage secures an adjacent 80 acres and has an underlying debt of $185,794.[1]

William Case, an experienced appraiser and broker of farms, was called as a witness by John Hancock and testified that he has appraised hundreds of farms in the state of Ohio. After careful and extensive consideration of the debtors' farmland, and using a "market approach" to valuation, it was his opinion that the debtors' farm has a value of $515,000.[2] In allocating this value to the two portions of land, he found the 399 acres to have a value of $428,600 and the 80 acres to be worth $86,400. In each instance the debt exceeds the value of the property. In addition it was the opinion of Mr. Case that the price of farm land in the debtors' area of the state could be expected to decline in value by 5% to 6% by the end of 1986.

It was stipulated by the debtors and PCA that PCA holds a security interest in the debtors' farm equipment and construction equipment, and that the amount of the debt as of the date of hearing was $220,935. By reducing the accrued interest by $52.26 per day for the 118 days between the filing of the petition and the date of hearing, the debt of PCA is approximately $214,770 on the date that the debtors filed their petition in bankruptcy. It was also jointly stipulated that the equipment had an appraised value of $204,000 and is depreciating at the rate of 8% per year.

Near the close of the hearing, the debtors offered to pay $40,000 to John Hancock by the end of November as adequate protection of its interest. No offer of adequate protection was made to PCA.

## CONCLUSIONS OF LAW

11 U.S.C. § 362(d) reads as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall

---

1. These are the amounts due and owing as of February 11, 1986 when the debtors filed their petition in bankruptcy. The balances were arrived at by deducting the interest, which Bruce Omness (a field representative for John Hancock) testified had accrued between the petition date and the hearing date, from the amounts claimed on the date of the hearing. Postpetition interest is not permitted to undersecured creditors. *See* 11 U.S.C. §§ 502(b)(2) and 506(b).

2. Mr. Case also valued the land under an "Income Approach" at $599,000 and a "Cost Approach" at $538,900. For the purposes of this hearing, the court is concerned with what buyers in the market are paying for similar type property, i.e. the market approach, rather than a capitalization of net income or replacement cost. However, under any of the three approaches to valuation the debt of John Hancock exceeds the value of the debtors' land.

grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The testimony and stipulations reveal that the debtors do not have equity in either their land nor their equipment. However, as stipulated by PCA, the debtors' assets are necessary to an effective reorganization under Chapter 11 of the Bankruptcy Code. Given that the debtors are attempting to reorganize a farming operation, it is obvious at this stage of the proceedings that the retention of the land and equipment is essential to their reorganizational efforts. Thus, the movants are not entitled to relief from the automatic stay pursuant to (d)(2) of 11 U.S.C. § 362.

■ There remains the question of whether John Hancock and PCA are adequately protected under § 362(d)(1). Section 361 of the Bankruptcy Code contains the following provision regarding adequate protection:

§ 361. Adequate protection. When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

It is clear from this section that the creditors are entitled to be protected against any decline in value of their collateral during the period from the filing of the bankruptcy petition to the date of plan confirmation. However, John Hancock asserts that a decline in the value of its collateral is not its only interest entitled to protection. John Hancock maintains that § 361(3) entitles it to its "opportunity costs" caused by the delay in enforcing its lien rights against the debtors' property, i.e. what it could earn by reinvesting its liquidated interest in its collateral. In support of this position John Hancock cites a leading case, *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984), which held that in providing adequate protection to an *undersecured* creditor, the creditor "is entitled to compensation for the delay in enforcing its rights during the interim between the petition and confirmation of the plan." *Id.* at 435. Only in this manner is the creditor receiving the value of his bargained-for rights.

Subsequently the Court of Appeals for the Eighth Circuit addressed the identical issue in *In re Briggs Transp. Co.*, 780 F.2d 1339 (8th Cir.1985), in which it adopted a more flexible approach than set forth in *American Mariner*, and refrained "from shaping a rigid rule that compensation for post-petition interest either must or cannot be required as a component of adequate protection in the context of an automatic stay." *Id.* at 1348.

[W]e cannot hold as a matter of law that a creditor is always entitled to compensa-

tion for the delay in enforcing its foreclosure rights during the interim period between filing of a petition and confirmation of a plan. Although the concept of adequate protection under sections 361 and 362 requires the court to protect the creditor's allowed secured claim by compensating for any loss of value of the collateral, what constitutes adequate protection in a particular case is a question whose resolution is best left to the knowledge and expertise of the bankruptcy court. *Id.* at 1351.

Quite recently the Court of Appeals for the Fifth Circuit promulgated a third approach to the problem of adequately protecting an undersecured creditor in *In re Timbers of Inwood Forest Associates, Ltd.*, 793 F.2d 1380 (5th Cir.1986), and held that "[s]ection 361(3) does not require periodic postpetition interest payments to an undersecured creditor to compensate it for the delay of the reorganization proceeding during the pendency of the automatic stay." *Id.* at 1416.

After a thorough review of the above-mentioned cases, as well as numerous decisions of district courts and bankruptcy courts, this court finds that it agrees with the rationale expressed by the Fifth Circuit and will adopt the approach of *Timbers.* In formulating its holding, the Fifth Circuit conducted an extensive and thoughtful analysis of the Code's relevant statutory language, the historical foundations of the Code's stay provisions and the legislative history of the Bankruptcy Reform Act of 1978. This court discerns nothing it could add to further elucidate the relevant issues nor to buttress the persuasiveness of *Timbers.* This court fully agrees that by requesting "opportunity cost payments" an

undersecured creditor is in effect seeking to recover postpetition interest and that 11 U.S.C. §§ 502(b)(2) and 506(b) forbid such interest payments. That is, " 'opportunity cost payments' are simply post-petition interest payments in sheep's clothing...." *Id.* at 1382 n. 1.

Next we turn to the question of the amount of payments necessary to adequately protect John Hancock and PCA for any decline in the value of their collateral. *For the purpose of this hearing,* the court finds the value of the debtors' farm land to be $515,000 and finds that the value of this collateral is expected to decline in the amount of $25,750 (5% × $515,000) by the end of 1986. A payment in this amount will adequately protect the interest of John Hancock.[3]

■ With regard to the debtors' equipment, it has been stipulated that its value is $204,000 and that it is depreciating at an annual rate of 8%. Therefore, from the date of the hearing to the end of the year it is estimated that the equipment will depreciate by 4.5% (205 days/365 days × 8%) or by $9,180 (4.5% × $204,000).[4]

■ 11 U.S.C. § 361(1) provides that adequate protection may take the form of *a cash payment* or periodic cash payments. Given the cyclical nature of agricultural operations and its resultant effect on the debtors' cash flow, as well as taking into consideration the creditors' familiarity with the agricultural business, it is reasonable and logical to permit the debtors to make one cash payment rather than requiring periodic cash payments. This enables the debtors' obligation of adequate protection to be matched with their expected ability to

3. The court is cognizant of the fact that the debtors previously offered to pay $40,000 as adequate protection. However, that offer was rejected by John Hancock. Therefore, an offer of $25,750 will be sufficient to adequately protect the interest of John Hancock.

4. No offer of adequate protection was made to PCA by the debtors. However, this lack of offer was premised on the belief that certain matters contained in an adversary proceeding, filed the morning of the hearing, would render prema-

ture the motions of the creditors for relief from the automatic stay. This court's bench ruling made it clear that the debtors' belief that the adversary proceeding would be resolved prior to the motions for relief from stay was incorrect and that the hearing on relief from stay would go forward. In this court's view, it is simply a matter of equity to permit the debtors an opportunity to make an offer of adequate protection to PCA.

pay. Therefore, the adequate protection payments should be made by the debtors no later than November 30, 1986.

The debtors should take notice that these adequate protection payments are only designed to protect the creditors' interest until the end of this year, and that the factors involved in a decision to grant relief from the automatic stay are in a constant state of flux. Thus far the debtors have failed to submit a plan of reorganization. This court is continuing the automatic stay in order that the debtors may avail themselves of an opportunity to sort out their financial affairs and come forward with a plan. After the beginning of next year, the creditors might renew their motions. The debtors are reminded that it is difficult to demonstrate that property is necessary for an *effective* reorganization if positive steps towards reorganization are not being taken.

Finally, the court has accepted the representations of the debtors that they would be able to obtain $40,000 for adequate protection payments. If these representations are unrealized and the payments are not paid by November 30, 1986, this court will order the stay lifted upon the filing of affidavits by John Hancock and PCA stating that they have not received the payments.

For the foregoing reasons it is ORDERED that payments of $25,750 to John Hancock and $9,180 to PCA by November 30, 1986 shall constitute adequate protection of their respective interests and that the provisions of 11 U.S.C. § 362 shall remain in effect until further order of this court.