**In re The CABLEHOUSE, LTD., Debtor.**

**INDIANA NATIONAL BANK, Movant,**

**v.**

**The CABLEHOUSE, LTD., Debtor.**

**Bankruptcy No. 1–86–00157.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Dec. 22, 1986.

See also, Bkrtcy., 63 B.R. 685.

William T. Hayden, Thomas C. Kilcoyne, Cincinnati, Ohio, for debtor.

Joanne M. Schreiner, Cincinnati, Ohio, for Indiana Nat. Bank.

Richard D. Nelson, Cincinnati, Ohio, for Creditors Committee.

## DECISION ON MOTION TO LIFT STAY

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 11 case, the present contested matter represents another round in the ongoing dispute between debtor, The Cablehouse, Ltd., and its construction lend-er, movant herein, Indiana National Bank. In an earlier matter decided May 23, 1986, we denied a motion of debtor to secure additional financing pursuant to § 364(d)(1), upon objection by Indiana National Bank. In that motion, debtor sought authorization to secure additional funding, a condition of which would have been the displacement of movant as first mortgagee in favor of a new lender.

We repeat the following statement of background from our earlier decision:

Debtor in this Chapter 11 case is a limited partnership which was formed for the purpose of rehabilitating a structure known as The Cablehouse located on Gilbert Avenue in Cincinnati, Ohio. The structure, after rehabilitation, was to be leased as commercial space. The general partner of the limited partnership is itself a limited partnership, Landmarke Properties, Ltd., II (hereafter "Landmarke Properties"). Alfred B. Craig, Jr., is a general partner of Landmarke Properties.

At the hearing on the present motion, the parties stipulated into the record the testimony from the earlier hearing, including the exhibits.

At the hearing on the present motion, the evidence offered by movant was not of great extent. It offered evidence by an officer that the amount of its claim presently, consisting of principal, interest and insurance charges, is $1,274,541.18, with interest running at the rate of $365.00 per day. There has been an increase in the amount of the debt due to interest of $84,-300.00 since the bankruptcy was filed. The only other witness called by movant was the appraiser who had testified at the earlier hearing. The burden of his testimony was that some work had been done on the project since the earlier hearing, and where, at that time, his opinion was that the value of the property was $675,000.00, he now believed its value to be $725,000.00.

Debtor presented evidence to reinforce the testimony from the earlier hearing, that upon completion of the project, its value would be $3,000,000.00. It recalled

its earlier appraiser, who had, at the earlier hearing, opined a present value of $1 to $1.2 million. He did not change his view, but said that he now believed it to be more weighted toward the higher value.

The parties asked that we take judicial notice of the fact that there is pending in the Common Pleas Court of Hamilton County a suit in which the priority of movant's position is contested by mechanic's lien holders. Debtor then offered very extensive testimony which we understand was intended to correct what it perceived to be a deficiency in its presentation at the earlier hearing. That is, it offered the testimony of a number of prospective subcontractors who verified the bids they had made for the particular work upon which they had bid, and said that the bid was good for a period of time. It is our understanding that the thrust of this testimony was to persuade the court that debtor could complete the project for the amount which its principal, Alfred B. Craig, Jr., had indicated. At the earlier hearing, this was said to be approximately $950,000.00. Craig said that further work had been done since the earlier hearing and his estimate for the cost to complete was now $724,062.00.

The setting against which the present controversy is played is provided by § 362(d), with movant contending that the § 362 stay which now prevents it from pursuing foreclosure remedies, should be removed on grounds that movant is not adequately protected. Additionally, movant argues that the ground provided by § 362(d)(2), that debtor has no equity in the property, and the property is not necessary to an effective reorganization, is another basis upon which the stay should be lifted.

■ It is the position of movant that it is entitled to adequate protection, and that nothing has been offered by debtor as adequate protection. While it is true that neither periodic payments nor a substantive lien as contemplated in § 361 have been tendered by debtor as adequate protection, and that no equity cushion exists to provide adequate protection, we conclude that movant must fail on this ground. The reason is

that, on the record before us, this creditor is adequately protected. It is an undersecured creditor, and this record shows that the value of its interest is not declining, but instead is increasing. In such a case, nothing by way of adequate protection need be provided by a debtor. *In re Shriver,* 33 B.R. 176, 182 (Bankr.N.D.Ohio 1983).

The facts here support the conclusion we reach in this regard. While there is conflicting appraiser testimony about the value of movant's collateral, for the purpose of determining whether movant is undersecured, it is to its own evidence of value that we should look, for that evidence constitutes, in effect, an admission against it. Movant's appraiser stated a value at the recent hearing of $725,000.00 for the project. The record shows that the principal amount of movant's claim at the time of filing of the case was $1,029,547.40. Clearly, movant is an undersecured creditor. Further, the testimony of its own appraiser shows that the value of the project has been increasing with time, going from $675,000.00 at the time of the earlier hearing to $725,000.00 at the time of the recent hearing.

■ It is necessary for us to take a position as to whether this undersecured creditor, movant herein, is entitled to interest or its equivalent during this interim period after the filing of the case and before a plan is filed. Two possibilities present themselves. One is that of *In re American Mariner Industries, Inc.,* 734 F.2d 426 (9th Cir.1984). In *American Mariner,* the court held that an undersecured creditor was entitled to payments prior to the presentation of a plan, for the reason that the deprivation of an undersecured creditor of access to its collateral deprives it of the present right to use of the money which it could realize upon a sale of the collateral. The other approach is that of *In re Timbers of Inwood Forest Associates, Ltd.,* 793 F.2d 1380 (5th Cir.1986). That case reaches the conclusion that there is no reason to depart from the normal scheme of the Bankruptcy Code to be found at 11 U.S.C. § 502(b)(2) and § 506(b), that post-

petition interest is not permitted to undersecured creditors. With Judge Clark of this court as expressed in *In re Pullins*, 65 B.R. 560, (Bankr.S.D.Ohio 1986), we hold that the *Timbers* approach is to be preferred, and that the "opportunity cost payments" of *American Mariner* are but disguised interest payments, barred by the Bankruptcy Code to an undersecured creditor.

■ We turn then to the alternative basis for relief from stay urged by movant, that to be found in the statute at 11 U.S.C. § 362(d)(2). Two elements must be established in order for movant to be entitled to succeed on this basis. The first is that debtor not have an equity in the property. As to this element, movant has the burden of proof. Section 362(g)(1). The second element is that the property not be necessary to an effective reorganization. As to this element, debtor has the burden of proof. Section 362(g)(2). This record shows that movant has satisfied its burden of proof that debtor does not have an equity in the property. Using the value testified to by debtor's own appraiser, $1,200,-000.00 for the present value of the project, existing secured interests exceed that amount. Movant's own claim is in excess of $1,029,547.40. In addition, the record shows that there are material men's liens exceeding $400,000.00 against the property. In making this determination, outstanding liens not just of the moving party, but also of other lienholders, are to be taken into account. *Stewart v. Gurley*, 745 F.2d 1194 (9th Cir.1984); *In re Shriver, supra,* at p. 186.

■ That leaves then the question of whether the second requirement of § 362(d)(2) is satisfied, that the property in question is not necessary to an effective reorganization. On its face, it would appear that this requirement cannot be satisfied in this case. We say that because this is a single asset case in which the asset is a real estate project as to which debtor wishes to have the benefit of Chapter 11 of the Bankruptcy Code, and without the property obviously there can be no reorganization. The cases, however, establish that this is too simplistic a view of this element. In order for debtor to carry its burden with respect to this element, the court must reach a conclusion that there is a reasonable possibility of a successful reorganization within a reasonable time. *In re Shriver*, 33 B.R. 176 (Bankr.N.D.Ohio 1983); *In re Terra Mar Associates*, 3 B.R. 462, 466; *In re Mikole Developers*, 14 B.R. 524, 526 (Bankr.E.D.Pa.1981); *In re Boca Development Associates*, 21 B.R. 624, 630 (Bankr.S.D.N.Y.1982).* This Chapter 11 case was filed January 5, 1986, just about a year ago. In May of this year, we held a hearing on a motion by debtor to secure additional financing from the Provident Bank, the Provident requiring as a condition of the loan that movant here be subordinated to the new lender. We decided against that motion and that is the law of the case. Evidence that Provident is still willing to make the loan, but only on the same basis of subordinating the claim of movant cannot here avail debtor. It still does not seem fair or equitable to us to compel movant here involuntarily to give up its preferred position and assume the risk that debtor's projections of costs to complete and valuation upon completion come true.

At the time of the earlier hearing, the evidence was that the amount of money needed to complete the project was approximately $950,000.00. At the more recent hearing, that on the present motion to lift the stay, the evidence was that it would now require $724,062.00 to complete the project. But the evidence was that, at least in part, the decrease in the cost of completing the project is due to the fact that debtor has been collecting rents which constitute cash collateral of the movant and, notwithstanding that debtor has not, as is required at § 363(c)(2), secured autho-

---

* We are aware that there is authority contrary to the cited cases. *See, In re Koopmans*, 22 B.R. 395 (Bankr.Utah 1982); *In re Sunstone Ridge Associates*, 51 B.R. 560 (D.C.Utah 1985). It seems to us that these cases read the word "effective" out of the statute. For that reason we decline to follow them.

rization for the use of such cash collateral, has proceeded to do so. We find nothing in the further expenditure on the project which has occurred to be any indication of a reasonable possibility of a successful reorganization akin to the facts which impelled the courts so to hold in *In re Vacation Village,* 49 B.R. 644 (Bankr.N.D.Iowa 1983) or *In re Island Helicopter,* 63 B.R. 809 (Bankr.E.D.N.Y.1986).

■ As to one thing this record is perfectly clear. That is that additional capital is needed to complete the project. Notwithstanding the passage of a year, debtor has been unable to find the necessary capital, nor is there any suggestion in the record that it will. On these facts, we are unable to reach a conclusion that there is a reasonable possibility of a successful reorganization within a reasonable time in this case.

The foregoing constitutes our findings of fact and conclusions of law. We conclude that movant is entitled to the relief which it seeks. The automatic stay of § 362 will therefore be lifted.