In re J.R. RENTALS, INC., Debtor.

The TWENTIETH STREET
BANK, Plaintiff,

v.

J.R. RENTALS, INC., Defendant.

Adv. No. 1–83–0021.
Bankruptcy No. 1–82–01436.

United States Bankruptcy Court,
S.D. Ohio, W.D.

March 25, 1983.

Gerald L. Baldwin, Cincinnati, Ohio, for defendant.

Randall L. Trautwein, Huntington, W. Va., for plaintiff.

BURTON PERLMAN, Bankruptcy Judge.

Defendant is the debtor in the related Chapter 11 case. That case is one of four linked Chapter 11 cases filed by entities controlled by Richard Johnson. Johnson owns all of the stock of the instant debtor/defendant. It is here significant that there are associated Chapter 11 cases with that filed by this debtor, because, while this debtor's sole asset was the real estate which is the subject of this proceeding, the related entities were responsible for the operation of a welding school at the subject premises. In the complaint now before us, plaintiff, mortgagee of the premises, seeks relief from the automatic stay of 11 U.S.C. § 362 so that it may proceed to conduct a public sale of the premises. The complaint alleges, that the grounds required by § 362(d) are present and justify the relief which is sought in the complaint. That is, plaintiff alleges that it is not adequately protected, that defendant has no equity in the real property and that the property is not necessary to reorganization. The matter came on for trial, at the conclusion of which we reserved decision.

The testimony adduced at the trial showed that there was no serious dispute that the amount of the indebtedness of defendant to plaintiff was $259,000.00, consisting of approximately $219,000.00 in principal, and the balance interest. As part of the arrangement between the parties, defendant was to maintain insurance on the building and also key man insurance on the life of Johnson. Defendant defaulted on both obligations. Plaintiff has been insur-ing the building since June 1982, though defendant says that it has attempted to secure insurance coverage, but has been refused because of the existing coverage by plaintiff. Defendant purchased the building in 1980 for $290,000.00. At that time officers of plaintiff had appraised the building at $297,000.00. Defendant thereafter spent approximately $138,000.00 remodelling the building, installing heating, rest rooms, wiring for lighting, as well as such wiring as is appropriate for a welding school. Of the wiring expenditures, $55,-000.00 was devoted to bringing the wiring up to state standards.

Johnson's welding school is in trouble and it is this which has led to the present Chapter 11 filing. The reason for the trouble is that there is a federal investigation into the affairs of the welding school, and the school cannot get contracts because of this investigation. The investigation has been in progress since 1979 and it is not known when it will be concluded. The last time that the welding school operated classes was in January 1982. While Johnson expects to resume operation of the welding school when his problems are resolved, there is no way of knowing when that will be. Meanwhile defendant has made no payments to plaintiff on its mortgage since January 1982.

The central testimony presented at the trial consisted of competing expert testimony as to valuation. The purpose of the valuation testimony from defendant's point of view, was to show that plaintiff was adequately protected, as required by § 362(d)(1), by an equity cushion, that is, a value of the property well in excess of secured claims against it. From plaintiff's point of view, valuation testimony was vital to carry its burden, as required by § 362(g), of showing that defendant had no equity on the subject property.

Plaintiff called Leland Fred Bunch, Jr. as its expert appraiser. Bunch testified that he had considered each of the three traditional bases for appraisal in doing the work requested of him by plaintiff. These are the cost, market, and income basis for valu-

ation. As to the cost approach he valued the land upon which the building stands at $65,000.00. His opinion was that it would cost $740,000.00 to build the building anew, and he depreciated that by $592,000.00. Using this technique, he arrived at a valuation on a cost basis of $213,000.00. Applying the market approach, he arrived at a valuation of $215,000.00. This approach depends upon the valuation of comparable sales. As to the income approach, Bunch arrived at a valuation of $197,000.00. This was based upon expected income less expenses. It will be seen thus that Bunch in his report and in his testimony arrived at a maximum valuation of $215,000.00. We are not persuaded as to the validity of this appraisal.

Bunch had not visited the premises at the time the appraisal was made. He had visited the premises two years prior when defendant had purchased it. Indeed, his firm was the brokerage firm which handled the property. It advertised the property for sale at $315,000.00. He admitted that installation of heating and air conditioning may increase value of property yet he did not take into account the fact that defendant had made substantial expenditures on this account since acquiring the property. Of greatest significance in causing reservations about his appraisal is our view as to his approach to valuation. Bunch listed six prior sales, including the subject property, yet chose, for reasons which we do not find persuasive, to select the two lowest values on a square foot basis to arrive at his market valuation of the subject premises. He disregarded the actual sale of the subject premises themselves. It seems to us that the comparable sales shown by Bunch in his report suggest that the price paid by defendant upon acquisition in 1980 did not so depart from other valuations that that price could not be regarded as having some validity. It was not disputed that defendant spent $138,000.00 in improving the property. While it is true that a substantial portion of that was for a specialized purpose and therefore must be discounted from the point of view of a different prospective purchaser, some of the expenditure was for improvements which ought to be added in.

Particularly, the evidence was that some $55,000.00 was spent for wiring to bring the building up to state standard. Thus, we find that the appraisal by Bunch is not persuasive.

We reach the same conclusion with respect to the appraisal by Taylor, defendant's expert. He merely added the price paid by defendant in 1980 to the expenditure made by defendant subsequently for a total valuation of $428,300.00. This is not an unreasonable starting point for an appraisal, but it is not an acceptable present valuation. Taylor admitted that the economic climate in Huntington had in the intervening two years since defendant acquired the building substantially declined. Nor he did not take into account that a substantial portion of the expenditure made by defendant would not be of value to an occupier of the premises other than defendant. It is clear to us that a realistic value would be well below that of the Taylor appraisal, and well above that of the Bunch appraisal.

In this posture of the evidence on valuation, the allocation of the burden of proof made by § 362(g) becomes of crucial importance. There it is provided that plaintiff has the burden of proof on the issue of the debtor's equity in property, while the debtor has the burden of proof on all other issues. Here debtor/defendant has failed to carry its burden of proof as to the provision of adequate protection to plaintiff. While there may be some equity in the property, the evidence does not enable us to evaluate whether it is sufficient to provide adequate protection to this plaintiff. Moreover, there is ongoing attrition of any equity cushion and there is no suggestion by defendant of the provision of adequate protection by, for example, the means suggested at 11 U.S.C. § 361(1) against such attrition. Since § 362(d)(1) and § 362(d)(2) are stated in the disjunctive, all that is necessary in order that plaintiff be entitled to the relief which it seeks is that we find that defendant has not proved that plaintiff is adequately protected. See *In re Anderson,* 9 B.R. 248, 250 (Bkrtcy.E.D.Pa.1981). We so find.

Accordingly, a judgment will issue lifting the stay.