**In re Ernestine GREGORY and Guinn Gregory, Debtors.**

**Bankruptcy No. 383–02411.**

United States Bankruptcy Court, M.D. Tennessee.

April 16, 1984.

Steven L. Lefkovitz, Nashville, Tenn., for debtors.

Rebecca Lyford, Nashville, Tenn., for Federal Deposit Ins. Corp.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The Federal Deposit Insurance Corporation ("FDIC") seeks relief from the § 362

stay. The issues are: (1) whether nonbusiness, consumer, wage-earning debtors are eligible for Chapter 11 relief; and (2) whether the debtors' residence is "necessary to an effective reorganization" within the meaning of 11 U.S.C.A. § 362(d)(2)(B) (West1979).[1] The court finds that the debtors qualify for Chapter 11 relief, however, the FDIC is entitled to relief from the stay because the debtors have no equity in their residence and the property is not necessary to an effective reorganization.

The following constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

Ernestine and Guinn Gregory ("debtors") filed a voluntary Chapter 11 on September 12, 1983. The debtors scheduled Smith County Bank as a creditor secured by Lots 26 and 49 of a subdivision in Smith County, Tennessee and a 1979 Fleetwing camper and trailer.[2] The debtors' principal residence is located on Lot 26 and is not used to produce income.[3] Lot 49 is adjacent to the debtors' residence and is undeveloped.

On September 23, 1983, the FDIC, as successor in interest to the insolvent Smith County Bank, filed a motion for relief from the stay to foreclose on the lots and camper.[4] The FDIC had scheduled a foreclosure for September 13, 1983 but the sale was stayed by the debtors' bankruptcy petition the prior day.[5] The parties stipulated that

---

1. The FDIC also argued that "bad faith" constitutes "cause" for relief from the stay under 11 U.S.C.A. § 362(d)(1) (West1979) and that the debtors' petition was filed in bad faith on the eve of FDIC's foreclosure. "Good faith" is a statutory prerequisite to the confirmation of a Chapter 11 plan. 11 U.S.C.A. § 1129(a)(3) (West1979). *See also In re Nikron, Inc.,* 27 B.R. 773, 778 (Bkrtcy.E.D.Mich.1983); *In re Tomlin,* 22 B.R. 876, 877 (Bkrtcy.M.D.Ala.1982); *In re Maxim Industries, Inc.,* 22 B.R. 611, 613 (Bkrtcy. D.Mass.1982); *In re Nite Lite Inns,* 17 B.R. 367, 370 (Bkrtcy.S.D.Cal.1982).

 Several courts have held that "good faith" is also a threshold prerequisite to securing Chapter 11 relief and have equated "bad faith" with "cause" for the purpose of dismissing petitions under 11 U.S.C.A. § 1112(b) (West1979). *See, e.g., Connell v. Coastal Cable T.V., Inc.,* 709 F.2d 762, 764 (1st Cir.1983); *Meadowbrook Investers' Group v. Thirtieth Place, Inc.,* 30 B.R. 503, 505 (Bkrtcy. 9th Cir.1983); *In re 299 Jack-Hemp Associates,* 20 B.R. 412, 413 (Bkrtcy.S.D.N.Y. 1982); *In re Mogul,* 17 B.R. 680, 681 (Bkrtcy.M. D.Fla.1982); *In re Alton Telegraph Printing Co.,* 14 B.R. 238, 239 (Bkrtcy.S.D.Ill.1981); *In re G–2 Realty Trust,* 6 B.R. 549, 552 (Bkrtcy.D.Mass. 1980); *In re Tolco Properties,* 6 B.R. 482, 486 (Bkrtcy.E.D.Va.1980); *In re Dutch Flat Investment Co.,* 6 B.R. 470 (Bkrtcy.N.D.Cal.1980); *Chattanooga Federal Savings & Loan Ass'n v. Northwest Recreational Activities, Inc.,* 4 B.R. 36, 39 (Bkrtcy.N.D.Ga.1980).

 At least three courts have identified "bad faith" as an element of "cause" for relief from the stay under 11 U.S.C.A. § 362(d)(1) (West1979). *Myers v. The Beach Club,* 22 B.R. 597, 599 (Bkrtcy.N.D.Cal.1982); *Polkin, Inc. v. Lotus Investment, Inc.,* 16 B.R. 592, 595 (Bkrtcy. S.D.Fla.1981); *In re Victory Construction Co.,* 9 B.R. 549, 558 (Bkrtcy.C.D.Cal.1981).

 While § 362(d)(1) does not specifically incorporate § 1112(b), it is reasonable to conclude that a creditor should be granted relief from the stay if the case is one which the court should dismiss if a motion to dismiss under § 1112(b) were presented. *Polkin, Inc. v. Lotus Investments, Inc.,* 16 B.R. at 595.

 The knotty question whether "bad faith" is "cause" for relief from the stay under § 362(d)(1) (and the related question of what constitutes "bad faith") is reserved because it is not necessary to the outcome of this proceeding.

2. The debtors also scheduled Smith County Bank as an unsecured creditor in the amount of $5,500. The debtors listed two other unsecured creditors: Commerce Union Bank on a $623.46 MasterCharge account and Third National Bank on a $228.13 Bank AmericaCard account.

3. Guinn Gregory is a deputy sheriff with the Smith County Sheriff's Department. Gregory has taken a part-time job to help fund a reorganization plan. Ernestine Gregory is a homemaker.

4. Lot 49 and the camper have been surrendered to the FDIC by Agreed Order dated December 7, 1983.

5. 11 U.S.C.A. § 362 (West 1979) provides in relevant part as follows:

 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

the debtors have no equity in the property and that the debtors' offer of $500 monthly payments is adequate protection of the FDIC's interest in the residence.

## I. ELIGIBILITY FOR RELIEF UNDER CHAPTER 11

■ The FDIC argues that it is entitled to relief from the stay because consumer, nonbusiness debtors like the Gregorys are ineligible for Chapter 11. The FDIC relies on *In re Ponn Realty Trust* wherein the bankruptcy court held that "certainly the legislative history can leave no doubt that Chapter 11 of the Bankruptcy Code was intended for utilization solely in the business setting and not in a consumer context." 4 B.R. 226, 231 (Bankr.D.Mass. 1980).

This court declines to adopt such a restrictive interpretation of Chapter 11 eligibility.[6] Starting with the plain language of the Code, there is nothing in the eligibility provisions of 11 U.S.C.A. § 109 (West1979) barring nonbusiness individuals from Chapter 11. Section 109(d) provides that "only a person that may be a debtor under chapter 7 of this title, except a stockbroker or commodity broker and a railroad may be a debtor under chapter 11 of this title." Congress imposed no other explicit requirements or restrictions. The debtors are not stockbrokers or commodity brokers [or a railroad], but are individuals eligible for relief under Chapter 7 and consequently eligible for relief under Chapter 11.

If Congress intended that only business debtors be eligible under Chapter 11, a qualifying term or express limitation would have been included in § 109(d). Congress was careful to exclude stockbrokers, commodity brokers, and railroads from Chapter 11, but did not exclude individual consumer, wage-earning debtors. Elsewhere in § 109, Congress was careful to limit Chapter 13 eligibility to "only an individual with regular income," 11 U.S.C.A. § 109(e) (West1979), eschewing the broader term "person," and the drafters established maximum debt ceilings to further restrict Chapter 13 eligibility. In the face of obvious Congressional exactitude in drafting the eligibility criteria in § 109, this court will not imply the intent to exclude wage-earning debtors suggested in *Ponn Realty*.

The legislative history addressing Chapter 11 eligibility, rather than demonstrating an intention to exclude nonbusiness debtors from Chapter 11 relief, states that:

> Chapter 11, Reorganization is *primarily* designed for businesses, *although individuals are eligible for relief under the chapter.* The procedures of chapter 11, however, are sufficiently complex that they will be used only in a business case and not in a consumer context.

S.REP. NO. 989, 95th Cong., 2d Sess. 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5789 (emphasis added). Although Chapter 11 petitions are *primarily* filed by business debtors, the legislative history supports the view that consumer debtors might opt for Chapter 11 under certain circumstances.[7] The legislative his-

> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate.

**6.** Other courts have recognized a broader scope for Chapter 11 relief. The Bankruptcy Appellate Panel for the Ninth Circuit noted that:

> The [debtors] are qualified to be debtors under 11 U.S.C. § 109(d) and we find nothing else in the Code prohibiting the use of Chapter 11 to debtors seeking to save their family home from foreclosure.

*Warner v. Universal Guardian Corp.,* 30 B.R. 528, 529 (Bkrtcy. 9th Cir.1983). The Bankrupt-

cy Court for the Eastern District of New York held that "[p]ursuant to the dictates of chapter 11 and section 109(d) ... a partnership or individual is equally eligible to file a petition under chapter 11." *In re Levinsky,* 23 B.R. 210, 219 (Bkrtcy.E.D.N.Y.1982). Although neither of these courts was addressing a case involving consumer, wage-earning debtors, the statements of these courts support a broader view of Chapter 11 eligibility, consistent with the rehabilitative purpose of the chapter.

**7.** The appointment of committees and the costs involved in preparing and presenting a Chapter 11 plan make Chapter 11 filings substantially less desirable to consumer, nonbusiness debtors. The discharge provisions of Chapter 13

tory does not support the contention that Congress intended to force individual, wage-earning debtors into a Chapter 7 liquidation if relief under Chapter 13 is unavailable or unsatisfactory. Chapter 11 is available to wage-earning, consumer debtors willing to master the procedural complexities and shoulder the attendant costs.

## II. "NECESSARY TO AN EFFECTIVE REORGANIZATION"

■ The FDIC is entitled to relief from the stay under 11 U.S.C.A. § 362(d)(2) (West1979). Section 362(d)(2) allows relief from the stay if the debtors have no equity and the property is not necessary to an effective reorganization.[8] The debtors have stipulated that they have no equity in their residence. The debtors bear the burden of proof that the property is necessary to an effective reorganization. 11 U.S.C.A. § 362(g) (West1979).

■ Application of the phrase "necessary to an effective reorganization" requires two levels of analysis: the court must first ascertain what is an "effective reorganization", and then measure the necessity of particular property against that standard. No universal definition of "effective reorganization" is offered by the parties or apparent in the caselaw.[9]

"Effective" has been sensibly defined by many courts to require that a reorganization is possible or likely. *See Provident Bank v. Taylor*, 28 B.R. 691, 694 (Bkrtcy.S. D.OH.1983) ("court will lift the automatic stay where debtor has only illusory prospects for reorganization with or without the property"); *In re Boca Development Associates*, 21 B.R. 624, 630 (Bkrtcy.S.D.N. Y.1982) ("[The debtor] does not have any prospects for present financial restructuring nor has it filed a plan.... [T]he debtor has not established that an 'effective' reorganization is likely ..."); *Roslyn Savings Bank v. Comcoach Corp.*, 19 B.R. 231, 234 (Bkrtcy.S.D.N.Y.1982) ("While the property is clearly necessary to the reorganization, this does not address whether reorganization is possible or likely (i.e. that it be 'effective')."); *In re Dublin Properties*, 12

give additional encouragement to a debtor to file under that chapter. 11 U.S.C.A. § 1141(d)(2) (West 1979) prohibits the discharge of debts excepted from discharge pursuant to 11 U.S.C.A. § 523 (West 1979) and 11 U.S.C.A. § 1141(d)(3)(B) (West 1979) provides that "[t]he confirmation of a plan does not discharge a debtor if ... the debtor does not engage in business after consummation of the plan." Only in those circumstances in which a consumer debtor cannot qualify for Chapter 13 or where the available relief is unsatisfactory, will a debtor resort to Chapter 11. In the instant case, the debtors would be unable to modify the terms of their "balloon note" with Smith County Bank under a Chapter 13 plan because of 11 U.S.C.A. § 1322(b)(2) (West 1979). *See Batt v. Fontaine*, 27 B.R. 614, 615 (Bkrtcy. 9th Cir.1982); *In re Seidel*, 31 B.R. 262, 264 (Bkrtcy. D.Ore.1983). The debtors are consequently compelled to file Chapter 11 to attempt the desired reorganization.

**8.** 11 U.S.C.A. § 362(d) provides in pertinent part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

**9.** The scant legislative statement of the meaning of § 362(d)(2) indicates that Congress had "eve of foreclosure" filings in mind and then, possibly, only with respect to business properties. The legislative history indicates that § 362(d)(2) "is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure. The section is not intended to apply if the business of the debtor is managing or leasing real property, such as a hotel operation, even though the debtor has no equity if the property is necessary to an effective reorganization of the debtor." 124 Cong.Rec. 11,092–11,-093 (Sept. 28, 1978). *See also Dale Funding Corp. v. Garner*, 18 B.R. 369, 370 n. 1 (S.D.N.Y. 1982). The Senate Report indicates that § 362(d) was intended "to reach the single asset apartment type cases which involve primarily tax shelter investments and for which the bankruptcy laws provided a too facile method to relay [sic] conditions, but not the operating shopping center and hotel cases where attempts at reorganization should be permitted." S.REP. NO. 989, 95th Cong., 2d Sess. 53 (1978), U.S. Code Cong. & Admin.News 1978, p. 5839.

B.R. 77, 80 (Bkrtcy.E.D.Pa.1981) (reorganization must be "realistically possible"); *In re Clark Technical Associates, Ltd.,* 9 B.R. 738, 740 (Bkrtcy.D.Conn.1981) (relief from stay will be granted if all "debtor can offer is high hopes without any financial prospects on the horizon").

Some courts have suggested that different § 362(d)(2) standards should apply in consumer-debtor cases and in business cases:

> The "necessary to an effective reorganization" standard should take on an entirely different meaning given the rehabilitative purpose of Chapter 13.

*Dale Funding Corp. v. Garner,* 18 B.R. at 371; *In re Breuer,* 4 B.R. 499, 501–502 (Bkrtcy.S.D.N.Y.1980) ("Unlike Chapter 11, which by definition is a 'Reorganization' chapter designed to assisting distressed businesses, Chapter 13 is directed to consumer relief."); *Carpenter v. Youngs,* 7 B.R. 69, 71 (Bkrtcy.D.Mass.1980) (concern of bankruptcy court in addressing relief stay request is different in Chapter 13 context than in Chapter 11).

There are decisions holding that § 362(d)(2) is inoperative, in whole or in part, in Chapter 13 cases. *See, e.g., Citicorp Homeowners, Inc. v. Willey,* 24 B.R. 369 (Bkrtcy.E.D.Mich.1982); *In re Garner,* 13 B.R. 799 (Bkrtcy.E.D.N.Y.1981); *Citizens and Southern National Bank v. Feimster,* 3 B.R. 11 (Bkrtcy.N.D.Ga.1979); *In re Sulzer,* 2 B.R. 630 (Bkrtcy.S.D.N.Y. 1980). Other courts have held that the "necessary for effective reorganization" requirement applies in Chapter 13 and that the standards developed in Chapter 13 cases provide useful guidelines for § 362(d)(2) motions in nonbusiness Chapter 11 cases. *See, e.g., Savings & Loan Ass'n. v. Rodebaugh,* 12 B.R. 81 (Bkrtcy.D.Me. 1981); *Standard Mortgage Corp. v. Stewart,* 11 B.R. 93 (Bkrtcy.N.D.Ga.1981); *Beneficial Mutual Savings Bank v. Roselli,* 10

B.R. 665 (Bkrtcy.E.D.Pa.1981); *First Federal Savings v. Crouse,* 9 B.R. 400 (Bkrtcy. S.D.Tex.1981); *First National Bank v. Pittman,* 8 B.R. 299 (D.Colo.1981); *In re Zellmer,* 6 B.R. 497 (Bkrtcy.N.D.Ill.1980).[10]

In this case, the debtors contend that retention of their home is the *sine qua non* of this Chapter 11 case, thus "effective reorganization" means keeping the house. The debtors' argument is circular: "we filed Chapter 11 to save our house; therefore, saving our house is necessary to an effective reorganization." Although the debtors' desire to keep their home is no doubt sincere, the invitation to define "effective reorganization" in debtor-subjective terms must be refused, else the bankruptcy courts slip into the "never-never land" of measuring the psychological effect on debtors of retaining property interests. A purely subjective definition of "effective reorganization"—a scheme in which "effective reorganization" means the reorganization proposed by the debtor—would lead to absurd outcomes.

 It is the opinion of this court that "effective reorganization" for a consumer-debtor includes provision for some place for the debtor (and, if applicable, the debtor's dependents) to live. This is necessarily a general statement—it is impossible for a bankruptcy court to fix the form of abode that would satisfy § 362(d)(2)(B) in all cases.[11] Here enters the calculus the statutory requirement that the property also be "necessary." If an "effective reorganization" of a consumer debtor includes some provision for a place to live, then it is the task of the Bankruptcy Court in the context of a particular case to determine whether the property the debtor wishes to retain as a proposed place of living is "necessary" to that end.

 Most courts have analyzed "necessary" in § 362(d)(2)(B) from the standpoint

---

**10.** This is a Chapter 11 case. The applicability of § 362(d)(2) to Chapter 13 cases is not addressed or decided.

**11.** We are obviously not attempting any broad definition of "effective reorganization"—such is

not necessary in the context of this case. An objective description of "effective reorganization" applicable to all reorganization cases seems doomed to be so general as to be useless of application.

of whether the property is essential to the debtor's production of income.[12] This test is unsatisfactory in the context of consumer nonbusiness debtors where the property at issue is a place to live.[13] Although there are unusual cases where a wage-earning debtor uses his home in the production of income,[14] and every nonbusiness debtor can argue that his home enables him to function in society and thereby relates to income production, the better course is to recognize that *"necessary"* does not require a finding of income production where the element of an effective reorganization at issue is the debtors' living quarters.[15]

This court believes that a debtor's home is *necessary* to an effective reorganization only if the property is not fungible with other living arrangements meeting the debtor's minimum living requirements. "Necessary" connotes "essential" or "indispensable" and must be given its ordinary meaning in the absence of contrary legislative intention. *See, e.g., United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 104, 108, 100 S.Ct. 2051, 2054, 2056, 64 L.Ed.2d 766 (1980). Fungibility, or the absence of suitable alternative living arrangements, is an obvious application of the notion of "indispensable." To complete the test of fungibility, it is appropriate to reconcile fungibility with the debtor's minimum living requirements. Measuring fungibility against the debtor's *minimum* living requirements is consistent with congressional use of the word "necessary" and allocates the burden to the debtors to demonstrate genuine need for the property. If the court determines that these debtors can "effectively reorganize" in a rented apartment, then the debtors' house would not be *"necessary"* to an "effective reorganization." If because of changes in interest rates, the absence of credit, the property's proximity to work, schools or church, moving costs, or the availability of alternative housing, these debtors cannot secure an appropriate[16] place to live, the court may find the property "necessary" for § 362(d)(2)(B) purposes.[17]

**12.** In a business reorganization case under Chapter 11, property will be necessary to an effective reorganization if it is income-producing, such as leased space, or if the property is income-related, in that it is required for the production of income in the debtor's business. Machinery and equipment, accounts receivable, inventory, office space, or business locations fall under this category.

*In re Garner,* 13 B.R. 799, 803 (Bkrtcy.S.D.N.Y. 1981); *Clark Equipment Credit Corp. v. Kane,* 27 B.R. 902, 903 (Bkrtcy.M.D.Pa.1983) (log-skidder necessary to the production of income for debtor's logging company); *Ford Motor Credit Co. v. Classic Printers, Inc.,* 24 B.R. 24, 25 (Bkrtcy.S.D. Fla.1982) (printing press necessary to production of income in debtor's printing business); *Roslyn Savings Bank v. Comcoach Corp.,* 19 B.R. at 234 (property contained specialized improvements and equipment; in addition, availability of labor made this property essential to corporation's income).

**13.** If we assume that § 362(d)(2)(B) applies in Chapter 13 cases, *see,* note 10 *supra.,* universal application of an income production test for "necessary" might lead to relief from the stay under § 362(d)(2)(B) in every Chapter 13 case in which the debtor lacks equity in consumer goods—an outcome not intended by Congress and inconsistent with the philosophy of Chapter 13 relief.

**14.** *See, e.g., St. Petersburg Federal Savings and Loan Ass'n. v. Vincent,* 7 B.R. 866, 868 (Bkrtcy. M.D.Fla.1980) (home used by debtor in insurance business); *In re Sulzer,* 2 B.R. 630, 634 (Bkrtcy.S.D.N.Y.1980) (psychoanalyst using home as part-time office).

**15.** In other contexts, "income producing" may be the appropriate benchmark for "necessary" in the § 362(d)(2) calculation. *See* footnote 12 *supra.*

**16.** The use of the word "appropriate" is not intended to relax the "necessary" standard. Rather, the use of a qualifying term is a signal to creditors' counsel that a tent in the town square or a cell in debtors' prison, however "available," must meet the debtors' minimum living requirements to be considered fungible.

**17.** The debtor might demonstrate that his financial condition is so distressed that no lending institution would finance the debtor's purchase of a similar home or that there are no appropriate rental units available in the general vicinity of the debtor's workplace or the schools which the debtor's children attend, etc. The debtor might prove some special uniqueness about the property such as that the property has been adapted for a handicapped debtor. The debtor might also demonstrate that the transaction

412

The debtors in this case have stipulated that comparable housing is available for $150 per month less than they have offered as adequate protection payments to the FDIC. The debtors have expressed a sincere desire to retain this particular property but have offered no evidence that this property is not fungible with alternative living arrangements meeting their minimum needs. This was the debtors' burden of proof.

Accordingly, the FDIC's motion for relief from the automatic stay is GRANTED.

costs involved in finding alternative housing exceed the debtor's financial ability. *See e.g., Federal National Mortgage Ass'n. v. Henderson,* 21 B.R. 285, 287 (Bkrtcy.E.D.Pa.1982) (proof that Chapter 13 debtor could not find comparable rental property at amount of current payments justified retention of automatic stay); *Roslyn Savings Bank v. Comcoach Corp.,* 19 B.R. at 234 (improvements to the property for the construction of customized vehicles make the property unique and necessary); *Dale Funding Corp. v. Garner,* 18 B.R. at 371 (stay should be continued in Chapter 13 case because current mortgage rates and leasing costs make it impossible for debtor to relocate); *General Motors Acceptance Corp. v. Miller,* 13 B.R. 110, 114 (Bkrtcy.S.D.Ind.1981) (truck unnecessary for effective reorganization where debtors had other forms of transportation); *Beneficial Mutual Savings Bank v. Roselli,* 10 B.R. at 667 (debtors offered no evidence that keeping home was essential to plan; proof demonstrated that comparable housing was readily available and the home was unessential to debtor's employment). *St. Petersburg Federal Savings & Loan v. Vincent,* 7 B.R. at 870 (residence used by insurance agent necessary to reorganization when residence was integral component of liquidating plan); *Carpenter v. Youngs,* 7 B.R. at 71 (debtors' riding school could be conducted at many sites; therefore, absent a showing that this is the only suitable property, relief from the stay would be granted and the school relocated).