**In re Daniel J. LEONARD, Kathryn K. Leonard, Debtors.**

**Bankruptcy No. 92–00633.**

United States Bankruptcy Court, N.D. New York.

Oct. 30, 1992.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey A. Dove, of counsel), Syracuse, NY, for debtors.

David A. Loftus, Jr., Skaneateles, NY, for Syracuse Securities, Inc.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The within contested matter is before the Court by way of a motion filed on June 16, 1992, by Syracuse Securities, Inc. ("SSI") under § 362(d) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") for relief from the automatic stay in Daniel and Kathryn Leonard's ("Debtors") Chapter 11 case. SSI seeks the within relief in order to continue its pending foreclosure action against certain real property of the Debtors located at 7877 Salt Springs Road, Fayetteville, New York (the "Property"). Alternatively, SSI seeks dismissal of Debtors'

Chapter 11 case pursuant to Code § 1112(b).

Consolidated herewith, the Court also considers Debtors' motion, filed on June 25, 1992, to extend the exclusive period in which to file a plan of reorganization and to solicit acceptances thereto pursuant to Code § 1121(d).

At the conclusion of the hearing on SSI's motion, held on June 23, 1992 at the Court's regular motion term held in Syracuse, New York, it was determined that an evidentiary hearing would be required to resolve certain factual issues raised during the oral arguments. An evidentiary hearing, scheduled to be held on July 15, 1992 in Utica New York, was consensually adjourned to August 17, 1992. By letter to the Court dated July 24, 1992, SSI expressly waived the thirty day requirement imposed pursuant to Code § 362(e) for a decision on its motion for relief from the stay. The hearing was continued on August 28, 1992, and was completed on the same day. Thereafter, the parties were provided an opportunity to submit memoranda of law on the issues presented. The matter was finally submitted for decision on October 1, 1992.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(A) and (G).

## FACTS

On February 27, 1992, Debtors filed a voluntary petition under Chapter 11 of the Code. Debtors continue in possession of the Property and management of their affairs as debtors-in-possession pursuant to Code §§ 1107(a) and 1108. Debtors currently reside at the Property with their three small children. Debtor Daniel Leonard ("D. Leonard") is presently employed by General Electric Capital Corporation ("GECC") as an account executive in the business of leasing computer equipment.

By affidavit of its President Laurence M. Smith sworn to June 12, 1992, ("Smith Affidavit"), SSI alleges that on or about August 1, 1990 Debtors executed a Consolidation, Extension and Modification Agreement ("Agreement") securing a consolidated note and mortgage in favor of SSI in the principal amount of $464,000.00. SSI did not introduce copies of the Agreement, the consolidated note and mortgage, nor did it offer proof of perfection of any of the above items as part of its proof at the evidentiary hearing. However, Debtors' Schedule D, filed with their voluntary petition, lists SSI as a secured creditor holding a claim in the amount of $461,000.00 which is secured by the Property.

According to the Smith Affidavit, it appears that Debtors defaulted on their payment obligation under the Agreement by failing to make payments due thereunder commencing with the August 1, 1991 payment. The total amount due under the Agreement is as follows:

| | | |
|---|---|---|
| a. | Principal as of 8/1/91 | $461,738.10 |
| b. | Accrued interest as of 6/12/92 | 43,064.48 |
| c. | Late Fees ($85.76 × 9 months) | 771.84 |
| d. | 1992 real property taxes paid by SSI | 7,415.94 |
| | | $512,990.36 |

*See* Smith Affidavit at ¶ 7

SSI alleges that on or about December 15, 1991, it commenced a mortgage foreclosure action against the Property, *see* Smith Affidavit at ¶ 10, and that on or about February 26, 1992, SSI obtained an order from the Supreme Court of the State of New York, Onondaga County, granting SSI's motion for summary judgment in that action. *See id.* at ¶ 11. Further, that pursuant to such final judgment of the state court a referee was appointed to ascertain and compute the amount due upon the consolidated note and mortgage. *Id.* SSI did not introduce a copy of the state court's Order in this proceeding. Since Debtors' Chapter 11 case was commenced on February 27, 1992, SSI is prohibited from taking any further action against the Property without obtaining an order from this Court modifying the automatic stay.

Debtors' Schedule A lists the value of the Property as $330,000.00. At the hearing SSI introduced the testimony of two appraisers. SSI's first appraiser, Joseph C. Farnett ("Farnett"), estimated that the fair

market value of the Property as of June 10, 1992, was $500,000.00. *See* SSI Exhibit D. SSI's second appraiser, Ronald M. Dennison ("Dennison"), estimated the fair market value of the Property to be $455,000.00 as of July 10, 1992. *See* SSI Exhibit E. In rebuttal, Debtors introduced the testimony of their appraiser, Dorothy B. Hall ("Hall"), whose appraisal report, dated January 18, 1992, assigns a fair market value of $330,000.00. *See* Debtors' Exhibit 6. All three appraisals were based upon the market approach to value.[1]

## ARGUMENTS

SSI contends that it is entitled to relief from the automatic stay pursuant to Code § 362(d). While SSI's moving papers do not specify which subsection of Code § 362(d) it is moving under, upon review of same it appears that SSI contends that it is entitled to relief under both Code § 362(d)(1) and (2).[2]

SSI contends that it is entitled to relief from the stay for cause under Code § 362(d)(1) due to a lack of adequate protection since its lien on the Property is being continually eroded by the arrearages, fees and costs which continue to mount while the stay remains in effect. Thus, the stay prevents SSI from mitigating its losses by prohibiting it from continuing its foreclosure action and selling the Property. Additionally, SSI contends that cause also exists in that Debtors exhibited a lack of good faith in filing their petition. In this regard, SSI contends that Debtors are using Chapter 11 to hinder SSI's foreclosure action against the Property without having any real prospect of a successful reorganization.

SSI also contends that relief from the stay should be granted under Code § 362(d)(2) because Debtors lack equity in the Property and because Debtors neither require the home for an effective reorganization nor will they be able to propose a plan of reorganization that will effectively address the enormous delinquency and daily carrying costs of the Property. Additionally, SSI contends that Debtors' Chapter 11 case should be dismissed for lack of good faith in filing pursuant to Code § 1112(b).

Debtors concede that SSI has not received any post-petition payments of interest or principal. However, Debtors contend that as an undersecured creditor, SSI is simply not entitled to receive adequate protection payments. Moreover, since SSI has presented no proof that the Property is suffering any diminution in value, SSI is not entitled to relief under Code § 362(d)(1).

After the close of proof at the evidentiary hearing, Debtors took the position that SSI failed to prove Debtors' lack of equity in the Property for purposes of Code § 362(g)(2), due to a failure on SSI's part to submit proof of the extent or validity of its lien against the Property. Having failed to satisfy this burden, Debtors contend SSI is not entitled to relief from the stay under Code § 362(d)(1) or (2).

Alternatively, Debtors contend that the uncontroverted proof which they introduced at the hearing establishes that the Property is necessary for an effective reorganization, therefore, relief from the stay under Code § 362(d)(2) should be denied. Finally, Debtors contend that a confirmable plan of reorganization is in prospect, and since the exclusive period in which the Debtors may file a plan has not yet expired, it would be premature to grant the relief sought by SSI.

## DISCUSSION

Upon the filing of a petition in bankruptcy, Code § 362(a) provides an automatic stay of, among other things, actions taken

---

1. Under the market approach to value, the appraiser derives a fair market valuation of the subject property based upon data from recently sold comparable properties located within the vicinity of the subject, taking into account any significant differences between the subject and comparable properties.

2. At the continuation of the evidentiary hearing held on August 28, 1992, SSI clarified that it was proceeding under both subsections of Code § 362(d).

by a creditor to realize the value of collateral provided by the debtor. *See United Savings Ass'n. v. Timbers of Inwood Forest,* 484 U.S. 365, 370, 108 S.Ct. 626, 629, 98 L.Ed.2d 740 (1988). However, creditors are not permanently stayed from taking action against such property as relief from the automatic stay is provided for under Code § 362(d).

Code § 362(d) provides two alternative basis for relief from the automatic stay. The first of which, for "cause", including the lack of adequate protection of an interest in property of a party in interest, is provided under Code § 362(d)(1). Alternatively, relief may be obtained under Code § 362(d)(2) if the debtor lacks equity in the property, *see* Code § 362(d)(2)(A), and such property is not necessary to an effective reorganization. *See* Code § 362(d)(2)(B).

The burden of proof in litigation concerning relief from the automatic stay is allocated under Code § 362(g) which provides that the party seeking relief from the stay has the burden of proving that the debtor does not have any equity in the property. *See* Code § 362(g)(1). Once the movant satisfies this burden, the burden of proof shifts to the debtor on all other issues. *See* Code § 362(g)(2).

█ The standards for lifting the stay set forth in Code § 362(d)(1) and (2) are expressed in the disjunctive. Thus, if the court finds that the debtor has no equity in the property and that such property is not necessary to an effective reorganization, it is not necessary to consider the alternate basis for relief from the stay, e.g., whether the secured creditor lacks adequate protection. *See In re Diplomat Electronics Corp.,* 82 B.R. 688, 692 (Bankr.S.D.N.Y. 1988) (citation to secondary authority omitted); *Nazareth National Bank v. Trina-Dee, Inc.,* 731 F.2d 170, 171 (3d Cir.1984).

█ For purposes of Code § 362(d)(2)(A) a debtor lacks equity in a particular piece of property when the sum total of the claims secured by the property exceed its value. *See In re Diplomat Electronics Corp., supra,* 82 B.R. at 692 (citations omitted); *In re New American Food Concepts, Inc.,* 70 B.R. 254, 258 (Bankr. N.D.Ohio 1987).

█ In the instant proceeding, Debtors contend that since SSI did not offer proof as to the extent or validity of its lien, SSI has failed to meet its burden under the first prong of Code § 362(d)(2)(A). Moreover, they argue that the Court should deny SSI's request to consider Debtors' Schedules as part of the proof herein because, *inter alia,* such request was not made until after the close of proof at the hearing. Debtors' argument is without merit because as part of the record in Debtors' Chapter 11 case, the Court may take judicial notice of the content of Debtors' Schedules, *see In re Pribonic,* 70 B.R. 596, 606 (Bankr.W.D.Pa.1987), at any point in the proceeding. *See* Federal Rule of Evidence ("Fed.R.Evid.") 201(c) and (f), applicable here pursuant to Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 9017. Here, the Court finds that Debtors' Schedule D, which lists a debt to SSI in the principal amount of $461,000.00, constitutes an admission under Fed.R.Evid. 801(d)(2) that such a debt was in fact owed to SSI as of the filing date of the petition. *See Sovran Bank, N.A. v. Anderson,* 743 F.2d 223, 225 n. 1 (4th Cir.1984) (dictum); *In re New American Food Concepts, Inc.,* 70 B.R. 254, 260 (Bankr.N.D.Ohio 1987).

Debtors' contention that they have been prejudiced in not having had the opportunity to explain the basis for listing the debt is specious at best. The " '[f]iling [of] the schedule[s] in a proceeding in bankruptcy is an ex parte act on the part of the [debtor], and in that proceeding is a solemn admission which, *unless corrected, binds him.*' " *Sovran Bank, supra,* 743 F.2d at 225 n. 1 (quoting *Horner v. Hamner,* 249 F. 134, 137 (4th Cir.1918)) (emphasis added). In filing the petition and accompanying Schedules, Debtors did not indicate that the debt to SSI was disputed in any way. If Debtors had a legitimate dispute concerning the extent or validity of SSI's mortgage lien, they had the opportunity and obligation to amend their Schedules during the interim period between the filing of the petition and the hearing on the within mo-

tion. Upon review of the record in this case it is readily apparent that Debtors have not done so. While the Court is loath to reward any form of carelessness in a proceeding before it, the Court is also mindful that under the circumstances present, the interests of the Debtors are not prejudiced by the Court's reliance on their Schedules, and that it would subvert the interests of judicial economy to deny SSI's motion without prejudice here, only to have SSI file a subsequent motion seeking the same relief, either on its own behalf or as the agent of a third party who, as alleged by Debtors, actually owns the debt.

SSI contends that after taking into account interest arrears, late charges and 1992 real estate taxes on the Property paid by SSI, the total amount of the debt under the Agreement is the sum of $512,990.36. *See* Smith Affidavit, at ¶ 7. However, a portion of this sum represents interest arrears and late charges accruing in the post-petition period. Utilizing the dollar amounts provided in the Smith Affidavit for per diem interest and late fee charges, it appears that the total amount of the debt as of the filing date of Debtors' petition was $498,509.44.[3] Clearly Debtors have no equity in the property based on their own appraisal or that offered by SSI's expert Dennison. The Debtors have equity, albeit paper thin, under only the valuation provided by SSI's expert Farnett.[4] Thus, the Court will determine which appraisal more accurately reflects the fair market value of the Property.

After listening to the appraisal testimony presented by both sides, the Court finds the appraisal of Hall to be a more accurate estimate of the fair market value of the Property. While recognizing the importance of utilizing the most recent comparable sales data for purposes of conducting an analysis of market value, the Court finds that SSI's appraisers failed to properly adjust the sale prices of the comparable properties utilized in their appraisals based on the more exclusive location of those properties.

Specifically, the Property is located on a two lane county roadway with a posted speed limit of 40 miles per hour. In contrast the comparables utilized by both of SSI's appraisers were located away from thru-traffic on either a cul-de-sac, e.g. 8414, 8418 and 8422 Hobnail, or a development off of the main road, such as 106 Henske Drive. Additionally, the homes immediately adjacent to the Property are modest by comparison and have a negative impact on the value of the Property. Hall testified that, based on a drive-by survey of the neighborhood in which the Property is located, the homes on either side of the Property would have approximate values of between $80,000.00 to $90,000.00 and $120,-000.00 to $150,000.00 respectively. *See* Transcript 8/28/92, p. 35–36. In contrast to this, the comparables located in Mallards Landing, which are practically neighbors to one another, had market values ranging from between $500,000.00 to $600,000.00. *See* SSI Exhibits E and D.

Additionally, Hall provided testimony that Mallards Landing is an exclusive subdivision comprised mostly of luxury homes. While Debtors' home might be able to command the price ascribed to it by SSI's appraisers if it were located in Mallards Landing, the fact is that it is located approximately five to seven miles away from there on a busy thoroughfare, adjacent to more modest homes with values ranging from between 25% to 50% of that of the Property. Hall's appraisal was based in part on sales data of homes sold in the Bonnie Brae development which is located approximately ¼ mile down the road from the Property. Hall testified that Bonnie Brae is a cul-de-suc containing approximately twenty homes with approximate values ranging be-

---

3. This amount represents the sum of the following: $136.28 per diem interest × 211 days from August 1, 1991 through February 27, 1992 = $28,755.08; late charges of $85.76 × 7 months = $600.32; principal balance due on mortgage $461,738.10; and 1992 real estate taxes paid by SSI $7,415.94.

4. It is not clear to the Court why SSI offered the testimony of two appraisers who arrived at different conclusions as to value.

tween $290,000 to $350,000. *See* Transcript of 8/28/92 at p. 16. While the comparable sales from Bonnie Brae were not as recent as those used by SSI's appraisers, the Court finds that the SSI appraisers did not properly adjust the Mallards Landing properties in order to make them truly comparable to the Property. *See e.g.* Transcript of 8/17/92 at p. 67 and 99–100. Thus, the Court finds the value of the Property to be $330,000 as provided in Debtors' Schedule A and corroborated by the appraisal and testimony of Hall.

Since the total secured debt against the Property, $498,509.44, exceeds the Property's fair market value by a substantial margin, it is clear that Debtors lacks equity in the Property. Therefore, the burden shifts to Debtors to prove that the Property is necessary to an effective reorganization. *See* Code § 362(g)(2).

The key factor to be considered in determining whether a non-business Chapter 11 debtor's residence is necessary to an effective reorganization is whether there is a lack of suitable alternative housing in the area at a cost comparable to or less than the debtor's current mortgage payment. *See In re Gregory,* 39 B.R. 405, 411 (Bankr.M.D.Tenn.1984). In this context, suitable alternative housing is measured according to the debtor's *minimum living requirements. See id.* The debtor has the burden of proving genuine need for the residence. Thus, where more affordable alternative housing is available to the debtor, whether by rent, lease or purchase, the residence is not necessary to an effective reorganization. *See id.; In re McIntyre,* 96 B.R. 65, 67 (Bankr.S.D.Miss.1988).

Additionally, property is not necessary to an effective reorganization simply because the purpose of filing the petition in Chapter 11 was to save the residence from foreclosure. *See In re Wilks,* 123 B.R. 555, 561 (Bankr.W.D.Tex.1991); *In re Gregory, supra,* 39 B.R. at 410.

In the absence of proof that suitable alternative housing is unavailable to the debtor because of, *inter alia,* the debtor's inability to obtain credit, the proximity to work, schools or church, availability of suitable housing, or due to the uniqueness of the home, e.g., specially configured for a handicapped person, the secured creditor is entitled to relief from the automatic stay. *See In re Gregory, supra,* 39 B.R. at 411, *In re Wilks, supra,* 123 B.R. at 562.

Debtors have failed to carry their burden of proof on this prong of Code § 362(d)(2). D. Leonard testified that in looking for alternative living arrangements he considered renting or leasing a three or four bedroom house in the Fayetteville Manlius school district. *See* Transcript 8/28/92, p. 66. D. Leonard also testified that upon review of the real estate section of the newspaper, it appeared that such housing would be available in the area for approximately $1,800.00 to $2,000.00 per month. D. Leonard testified he was told by a realtor that in order to obtain such housing a credit check would be necessary. *See id.* He testified that he discontinued looking into alternative housing after this point. *See id.* Debtors have presented no other evidence that alternative housing would not be available.

D. Leonard is presently employed and based on his own uncorroborated testimony expects to earn approximately $105,000.00 this year. Based on the monthly statements introduced into evidence, *see* Debtors' Exhibits 1 through 5, and Debtors' testimony that its monthly expenditures will be reduced by approximately $671.00 due to the cancellation of an insurance policy and having made the final payment on the Debtors' 1987 Pontiac station wagon, Debtors claim to have between $2,000.00 and $3,000.00 available to pay for alternative housing on a monthly basis. Debtors have not introduced any credible proof that under the present set of circumstances they would be unable to obtain suitable alternative housing.

D. Leonard also testified that the Property contains a private den which he uses to conduct business by telephone while at home in the evenings. That the Property may also be used in a way which contributes to the production of income does not make the residence necessary to

an effective reorganization when the same income producing activity can also be conducted elsewhere. *See Matter of Sulzer,* 2 B.R. 630 (Bankr.S.D.N.Y.1980); *cf. Matter of Deeter,* 53 B.R. 623 (Bankr.N.D.Ind. 1985) (farmer's residence which functions as an integral component of the farm operation necessary to an effective reorganization).

■ There being insufficient credible proof that suitable alternative housing meeting both the Debtors' minimum living requirements and financial ability is unavailable in the Fayetteville Manlius school district, or that they are likely to confirm a plan which will both provide for their creditors and permit them to maintain their current residence, the Court concludes that Debtors have failed to satisfy the burden of proving that the Property is necessary to an effective reorganization.

Having reached the conclusion that SSI is entitled to relief from the automatic stay under Code § 362(d)(2), it is not necessary for the Court to determine whether relief would also be granted under Code § 362(d)(1), or to give further consideration to the alternative relief sought by SSI, dismissal of Debtors' Chapter 11 case pursuant to Code § 1112(b).

Based on the foregoing conclusions it is

ORDERED that SSI's motion for relief from the automatic stay pursuant to Code. § 362(d)(2) is granted, and it is further

ORDERED that the automatic stay will remain in effect until January 15, 1993 and will automatically terminate on said date, to permit Debtors to obtain suitable alternative housing and relocate to same, and it is further

ORDERED that Debtors' motion to extend the exclusive period in which to file a plan of reorganization and to solicit acceptances thereto under Code § 1121(b) and (c)(3) is granted and Debtors' Exclusivity Period is extended until November 16, 1992 and Debtors' Acceptance Period is extended to December 28, 1992.