**In re Tony Curtis WHITE,
O'Saundra White.**

**Bankruptcy No. 97–16017.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Dec. 11, 1997.

Robert A. Goering, Goering & Goering, Cincinnati, OH, for Plaintiff.

W. Timothy Miller, Taft, Stetitinius & Hollister, Cincinnati, OH, for Defendant.

## ORDER GRANTING MOTION TO DISMISS OR CONVERT AND GRANTING MOTION FOR RELIEF FROM STAY

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on Star Bank N.A.'s Motion to Dismiss or in the Alternative to Convert to a Case under Chapter 7 (Doc. 9), the Debtors' Response (Doc. 15), and the Bank's Reply (Doc. 20). Also before the Court is the Bank's Motion for Relief from Stay with respect to the Debtors' Quarterhorse Property (Doc. 7), the Debtors' Response (Doc. 16), and the Bank's Reply (Doc. 19). A hearing was held on November 13, 1997.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

The issues before the Court concern the eligibility of the Debtors to file a chapter 13 petition under 11 U.S.C. § 109(e) and whether relief from the automatic stay should be granted regarding the Debtors' residence.

On January 11, 1996, the Bank commenced a foreclosure action in state court regarding the Debtors' business property on Grooms Road. On June 25, 1997, a foreclosure judgment was entered against the Debtors in favor of the Bank in the amount of $139,561.24 plus interest, attorney fees, and expenses. The property was sold at a sheriff's sale on September 25, 1997 to a bidder for $288,000.00, but the order confirming the sale was not entered by the state court because of the Debtors' intervening bankruptcy.

On January 21, 1997, the Bank commenced a foreclosure action in state court regarding the Debtors' residence on Quarterhorse Court. On July 10, 1997, a foreclosure judgment was entered against the Debtors in favor of the Bank in the amount of $366,855.16, plus interest, attorney fees, and expenses. The property was ordered to be sold at a sheriff's sale no sooner than October 1, 1997. The sheriff's sale was not held because of the Debtors' intervening bankruptcy.

On October 1, 1997, the Debtors filed their chapter 13 petition. The schedules indicate debts totaling $814,711.01[1]. The schedules do not list the Grooms Road property or any debt associated with the Grooms Road property. Specifically, the Debtors did not include in their schedules the $159,759.51 debt to the Bank, a $112,229.30 debt to the Small Business Association, and $24,362.23 in property taxes. The Debtors did disclose in their statement of financial affairs that the Grooms Road property had been "foreclosed and sold by Star Bank [for] $288,000.00". The Debtors' proposed plan contains the following statement:

> Star Bank may confirm the sale on the foreclosure sale on 11343 Grooms Road, Cincinnati, OH. The property sold at Sheriff's sale for $288,000 in September, 1997.

A debtor with "noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000" may file a petition under chapter 13. *See* 11 U.S.C. § 109(e). Stated otherwise, a debtor with debts exceeding $1,000,000 is not eligible for chapter 13 relief. Debts owed "on the date of the filing of the petition" are to be included in the eligibility analysis. *See id.* Failure to meet the eligibility requirements of § 109(e) may be grounds for dismissal or conversion to chapter 7. *See In re McClaskie,* 92 B.R. 285 (Bankr.S.D.Ohio 1988)(Sellers, J.). Whether this Court agrees with the monetary limit or not, it is bound by it.

The Debtors do not dispute the amount of the debts associated with the Grooms Road property nor do they deny that the inclusion of those debts would render them ineligible for chapter 13 relief under § 109(e). Rather, the Debtors contend that the debts associated with the Grooms Road property need not be listed in their schedules because the foreclosure sale terminated their rights in the Grooms Road property and because the debts are "not ... noncontingent" and are in a "state of transition".

Under Ohio law, title remains with the mortgagor until a foreclosure sale is consummated or the mortgagee otherwise extinguishes the mortgagor's right to redeem. *Hausman v. City of Dayton,* 73 Ohio St.3d 671, 653 N.E.2d 1190, 1194, *reconsideration denied,* 74 Ohio St.3d 1423, 655 N.E.2d 742 (1995). A mortgagor's statutory right to redeem under Ohio Revised Code § 2329.33 is absolute and may be validly exercised at any time prior to the confirmation of the sale of the property. *Id.* Thus, it is not the sheriff's sale but the subsequent confirmation of the sheriff's sale by the state court that terminates the mortgagor's right of redemption.

In the present case, since the sheriff's sale of the Grooms Road property had not been confirmed by the state court as of the petition filing date, the Debtors still possessed their right of redemption in the Grooms Road property. Accordingly, the Debtors

---

1. Of this amount, $696.64 is listed as disputed.

should have listed the Grooms Road property on their schedules as well as the debts associated with the Grooms Road property.

The Debtors contend that the Sixth Circuit case of *In re Glenn*, 760 F.2d 1428 (6th Cir.), *reh'g and reh'g en banc denied* (6th Cir.), *cert. denied*, 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) supports their position. We disagree. In *In re Glenn*, the Sixth Circuit held that the sheriff's sale of real property terminates the debtor's right to cure a mortgage arrearage under 11 U.S.C. § 1322(b). *In re Glenn* does not address a debtor's eligibility under § 109(e). The concerns and interests to be protected under § 1322(b), i.e., the balancing of rights between debtors who want to retain their residences and the mortgagees of private homes, are vastly different from the threshold question of whether a debtor is eligible for relief under chapter 13.

Our holding is further supported by the recent case of *In re Elliott*, 214 B.R. 148 (6th Cir. BAP 1997), wherein the Bankruptcy Appellate Panel for the Sixth Circuit held that a vehicle subject to the debtors' right of redemption was property of the chapter 13 bankruptcy estate, where the secured creditor had repossessed the vehicle and obtained a repossession title. Under Ohio law, a debtor may redeem his repossessed vehicle until it is disposed of by the secured creditor. *See id.* *Compare* Ohio Rev.Code § 1309.49 (collateral may be redeemed until disposed of by secured creditor) *with* Ohio Rev.Code § 2329.33 (real property may be redeemed until foreclosure sale confirmed). The Bankruptcy Appellate Panel in *In re Elliott* likewise limited *In re Glenn* to addressing the chapter 13 debtor's power to modify a secured creditor's claim under 11 U.S.C. § 1322(b).

■ The Debtors also contend that the Grooms Road debts are "not ... noncontingent", because of the status of the foreclosure proceeding, because the Debtors' plan provides for the confirmation of the sheriff's sale, and because confirmation of the plan extinguishes the debt.

Section 109(e) requires only the inclusion of noncontingent debts[2]. The Code does not define contingent or noncontingent. Generally, something is contingent if it is "possible, but not assured" or "conditioned upon the occurrence of some future event which is itself uncertain or questionable." *Black's Law Dictionary*, 321 (6th ed.1990); *see also In re Hughes*, 98 B.R. 784, 788 (Bankr. S.D.Ohio 1989)(Clark, J.)(classic example of contingent debt is tort claim on which no judgment has been entered).

The Debtors have agreed to the lifting of the stay on the Grooms Road property so that the sheriff's sale may be confirmed, *see* Doc. 18, and the Debtors' proposed plan calls for the confirmation of the sheriff's sale. Nevertheless, as of the petition filing date, the Debtors owed (and still do owe) the debts associated with the Grooms Road property. The fact that the sheriff's *sale* of the Grooms Road property has not yet been confirmed does *not render* the Grooms Road *debts* contingent. Further, whatever happens upon confirmation of the plan has no bearing on the amount of the Debtors' debts as of the petition filing date. The Court also notes that the Grooms Road debts are substantial in amount.

Accordingly, the Debtors' Grooms Road property debts are noncontingent, and must be included in the eligibility calculation.

■ This Court makes the above finding without rendering a decision about the Debtors' good faith or lack thereof.[3] Assuming, *arguendo*, that the Debtors did have good faith in filing their schedules, such good faith does not prevent this Court from making a proper determination of eligibility under § 109(e) when the Debtors' good faith is premised on an incorrect legal theory. *See* 11 U.S.C. § 105(a).

**2.** The Debtors do not contend that the Grooms Road debts are unliquidated.

**3.** In *In re Pearson*, 773 F.2d 751, 756 (6th Cir. 1985), the Sixth Circuit held that the Court should "rely upon the debtor's schedules checking only to see if the schedules were made in

good faith on the theory that section 109(e) considers debts as they exist at the time of filing, not after a hearing." *In re Pearson* dealt with a *disputed* debt. *See In re McClaskie*, 92 B.R. at 286–87.

In conclusion, we find that the Grooms Road debts in the amount of $296,351.04 shall be included for purposes of eligibility calculation under § 109(e); that the Debtors' total debts are in excess of $1,000,000; and therefore that the Debtors are not eligible for chapter 13 relief.

Also before the Court is the Bank's motion for relief from stay regarding the Debtors' Quarterhorse property. In the event that the Debtors may choose to convert their case to one under chapter 7 or 11, *see infra,* and in view of the time constraints imposed on the Court by 11 U.S.C. § 362(e), we find it appropriate to rule on the motion for relief from stay at this time.

Pursuant to 11 U.S.C. § 362(d)(2)[4], the automatic stay shall be lifted if the debtor does not have an equity in the subject property and if such property is not necessary to an effective reorganization. A debtor's home is necessary to an effective reorganization only if the property is not fungible with other living arrangements meeting the debtor's minimum living arrangements. *See In re Gregory,* 39 B.R. 405, 411 (Bankr.M.D.Tenn.1984)(Lundin, J.). The creditor has the burden of proof on the issue of equity; the debtor has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g).

The Debtors' schedules show the value of the Quarterhorse property to be $450,-000.00. The schedules show the Quarterhorse property to be encumbered by liens totaling $687,488.00[5]. Based upon these figures, the Debtors have no equity in the Quarterhorse property. *See In re Indian Palms Associates,* 61 F.3d 197, 206 (3rd Cir.1995)(equity is comparison of total liens against property with property's current value); *In re The Cablehouse,* 68 B.R. 309, 312 (Bankr.S.D.Ohio 1986)(Perlman, J.). The fact that the Bank may or may not have an equity cushion in the property is relevant to

an analysis under § 362(d)(1)[6] but not under § 362(d)(2).

The Debtors contend that the sole motivation for their chapter 13 filing was to keep their home. Although there is nothing inherently wrong with this motivation, this subjective intent does not satisfy the effective reorganization test. *See In re Gregory,* 39 B.R. at 410. The Debtors contend that the residence is close to Mr. White's place of business, where he works irregular hours, and that they have added improvements to the house in the form of a finished basement and landscaping. The Debtors presented no evidence that alternative housing was unavailable. The Debtors' residence, valued at $450,000.00, with or without a finished basement and new landscaping, far exceeds a minimum living requirement. *See id.* at 411.

The Debtors contend that they should be allowed to retain their residence because they are willing and able to make their plan payments. However, the Debtors' ability to make their proposed payments is not relevant to the Court's inquiry under § 362(d)(2). Furthermore, the Court notes its concern with the Debtors' proposed plan which would allow them to retain a very expensive home on which they are ten months behind in payments (the sizeable arrearage is $30,975.00) yet pay their unsecured creditors only 25%.

In sum, we find that the Debtors have failed to meet their burden of showing that the Quarterhorse property is necessary to an effective reorganization.

Accordingly, we find that the stay shall be lifted under § 362(d)(2) to allow the Bank to pursue its foreclosure on the Quarterhorse property.

In view of the above, it is not necessary for the Court to address whether the stay should be lifted under § 362(d)(1). *See e.g., In re*

---

**4.** Since this Court has found the Debtors not eligible for relief under chapter 13, the Court need not address the Debtors' contention that § 362(d)(2) is inapplicable in chapter 13 cases.

**5.** The schedules show a secured claim of $387,-488.00 and a separate notation of "$300,00 (liens)".

**6.** Under § 362(d)(1), the automatic stay may be lifted for cause, including lack of adequate protection.

*J.R. Rentals, Inc.*, 28 B.R. 357 (Bankr. S.D.Ohio 1983)(Perlman, J.), *In re Elmira Litho, Inc.*, 174 B.R. 892, 900 (Bankr. S.D.N.Y.1994)(court may lift stay if the movant prevails under either (d)(1) or (d)(2)).

The Debtors have twenty days from the entry date of this Order to convert their case to one under chapter 7 or chapter 11 of the Bankruptcy Code or to take such other action as they deem appropriate. If no action is taken within that time period, the Court will dismiss this case.

IT IS SO ORDERED.