**In re NEW ERA COMPANY, Debtor.**

**Nos. 90 Civ. 5498, 90–B–20362.**

United States District Court,
S.D. New York.

April 19, 1991.

Fink Weinberger, P.C. (Richard L. Koral, of counsel), White Plains, N.Y., for appellant Arthur Morrison.

Whitman & Ransom (Norman N. Kinel, Jerome Lee Davidow, of counsel), New York City, for appellee Bank Audi (U.S.A.).

## OPINION

GOETTEL, District Judge:

### I. FACTS

In February 1988, Bank Audi (U.S.A.) (the "Bank"), a New York corporation, loaned $615,000 to New Era Company ("New Era"), a New York general partnership, for the purchase of a five-story residential building in Manhattan. The property is the sole partnership asset and is now worth approximately $650,000. It is unclear precisely what the property was worth at the time the loan was made, but a Bank officer has testified that it was worth somewhat less than the amount of the loan. *See infra* note 4. A promissory note was signed by the four general partners of the partnership, which included 81–89 Restaurant, Inc., the only corporate partner. Arthur Morrison signed on behalf of the corporation and he is apparently the corporation's president and sole shareholder. Each of the three individual partners, plus Morrison, also signed personal guarantees of the note. In addition, one of the individual partners, Richard Blitz, established a $450,000 certificate of deposit (the "CD") with the Bank to further secure the partnership's obligations. The CD is now worth approximately $500,000.[1]

---

1. While both parties agree that Blitz provided the funds to establish the CD, Morrison suggests that it is actually New Era's property. While we were told that this issue was being litigated in

Shortly thereafter, New Era defaulted and an action was brought in the Supreme Court of the State of New York, County of New York, for foreclosure. Summary judgment was granted on November 6, 1989 in favor of the Bank. Before the Bank could foreclose on the property, however, Arthur Morrison filed a chapter 11 petition placing the partnership in bankruptcy. Morrison's petition, which was filed on January 12, 1990, claimed that he had become a general partner individually, along with Blitz and two new parties, an individual and a trust, by purchasing a former partner's interest. None of the other partners, old or new, submitted any claims on behalf of the partnership to challenge the filing of this involuntary petition. Also, notwithstanding an order by Judge Schwartzberg, the debtor never filed any schedules or lists of creditors.

On May 30, 1990, Judge Schwartzberg granted the Bank's motion for relief from the automatic stay to enable it to proceed with the foreclosure. *See In re New Era Co.*, 115 B.R. 41 (Bankr.S.D.N.Y.1990).[2] The amount now owed to the Bank by New Era is approximately $830,000. In his ruling, Judge Schwartzberg first relied on 11 U.S.C. § 362(d)(2). This provision allows such relief when a creditor is seeking property that the debtor does not have equity in and which is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). Since the property was valued at $650,000 and the debt was approximately $830,000, the court concluded that there was no equity in the property. Notwithstanding Morrison's request, Judge Schwartzberg did not include the value of the CD in determining whether New Era had equity in the property. As to the debtor's need to retain the property for reorganization, Judge Schwartzberg concluded that since this was the sole partnership asset, since there had been no filings by the debtor as required by court order, and since the property was being badly mishandled, it was extremely

doubtful that reorganization would ever occur. Judge Schwartzberg went on to state that relief from the stay was also appropriate under 11 U.S.C. § 362(d)(1), which allows relief for cause, including lack of protection of a creditor's interest in property of the debtor. Again, Judge Schwartzberg did not address the availability of the CD, but simply stated that the partnership's mismanagement of the property created a real risk to the Bank's interest. Moreover, he concluded that the hypothetical claim that the building could be razed and replaced by condominiums was not supported by any affirmative evidence.

The motion before Judge Schwartzberg also sought dismissal of the petition because it was filed by Morrison, allegedly a nonpartner. While finding that Morrison was not a partner as he claimed to be because he had adduced no evidence establishing that any partners had consented to his becoming a partner, which is a prerequisite, Judge Schwartzberg nonetheless allowed the proceeding to continue because he concluded that the Bank, being neither the debtor nor a partner, had no standing to make the objection.

Morrison has now appealed and the Bank, in addition to seeking affirmance of Judge Schwartzberg's ruling, has filed a motion to dismiss the appeal, claiming that since Morrison is not a partner, he has no standing to bring this appeal. In response, Morrison argues that the courts have allowed appeals by parties who were "directly and adversely affected pecuniarily" by a decision. *See Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641–42 (2d Cir.1988) (citations omitted). Judge Schwartzberg, while obviously not addressing this particular issue, did suggest that Morrison had a stake in the outcome of this proceeding and we certainly agree. We need not decide whether this interest is sufficient to give Morrison standing, however, for even assuming he does have standing, Judge Schwartzberg's ruling granting Bank Audi

an interpleader action brought by the Bank before Judge Edelstein in the Southern District of New York, 90 Civ. 5122, Judge Edelstein's chambers informs us that a default judgment was entered on December 13, 1990.

**2.** The order implementing this decision is dated June 11, 1990.

relief from the automatic stay must be affirmed.[3]

## II. DISCUSSION

Section 362(d)(2) provides as follows:

> On request of a party in interest ... the court shall grant relief from the stay ...
>
> ....
>
> (2) with respect to a stay of an act against property ..., if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2). This section "is directed toward real property mortgage foreclosures where the petition for relief is filed on the eve of the foreclosure." 1 W. Norton, *Bankruptcy Law & Practice* § 20.27, at 50 (1981). Since the provision was drafted in the conjunctive, it is clear that both prongs of the test must be satisfied before relief from the stay can be granted. In this regard, while the issue of lack of equity must be proven by the party seeking relief from the stay, the question of whether the property is necessary for an effective reorganization must be established by the debtor. 11 U.S.C. § 362(g). We now address these two questions.

The first issue is whether the debtor has equity in the property sought by the creditor. Equity in this context refers to the "difference between the property value and the total amount of liens against it." *In re 6200 Ridge, Inc.*, 69 B.R. 837, 842 (Bankr. E.D.Pa.1987) (citations omitted). In the case at bar, the parties admit that while the debtor now owes approximately $830,000 to the Bank, which is secured by a lien on the property, the property is only worth $650,-000. Therefore, under this well-established definition, New Era has no equity in the property. However, Morrison argues that since the CD is now worth $500,000, its value in combination with the value of the property leaves the Bank adequately protected. Thus, Morrison suggests that in determining whether a debtor has equity in the property, a court must take into account the entire collateral package available to the creditor, especially when the loan documents do not specify which collateral is to be utilized first. This is particularly appropriate, Morrison argues, in a situation like that before us where the property was worth less than the amount of the loan even when the loan was initially negotiated.[4]

Morrison's approach to this issue mixes section 362(d)(2) with 362(d)(1), notwithstanding the fact that they are independent bases for granting a creditor relief from the automatic stay. Section 362(d)(1), as noted, refers to a creditor's ability to seek relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The term "adequate protection" is discussed in section 361 and while it is unnecessary to review the specific examples of adequate protection contained in that section, it is clear that one way to assure such protection is to have an "equity cushion." 2 L. King, *Collier on Bankruptcy* § 362.07, at 362–60 (1991). An equity cushion is "the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest from loss due to any decrease in the value of the property during [the] time the automatic

---

3. Bank Audi also seeks to dismiss this appeal because Morrison's appellate brief was filed one month late. While we will not consider this issue, it is certainly consistent with the way in which Morrison has conducted the prosecution of this bankruptcy proceeding.

4. A Bank officer testified that the Bank did not consider the property value at the time the loan was issued to be equal to the amount of the loan and that is why additional security was needed. *See* Tr. at 49–50 (May 10, 1990). The precise value the Bank attributed to the property at that time, however, is unclear. We find this testimony to be somewhat confusing in light of the fact that the loan was for $615,000 and the property is now worth $650,000. Since the loan was negotiated in 1988 and property values in New York City have generally decreased since then, it seems reasonable that the property, which Judge Schwartzberg found to have been poorly maintained, was worth more than $650,000 in 1988. The Bank does not address this issue, however, nor need we consider it to resolve the instant appeal.

stay remains in effect." *In re Mellor*, 734 F.2d 1396, 1400 n. 2 (9th Cir.1984). Although this definition is technically not satisfied in the case at bar since there is no excess value in the property itself to protect the Bank, it is clear that under the same rationale, the value of the CD is relevant in considering whether the Bank is adequately protected. *See In re 6200 Ridge*, 69 B.R. at 842 n. 10. However, while the concepts of equity cushions and adequate protection are relevant for section 362(d)(1), where one looks to the adequate protection of the creditor, there is no mention of these concepts in section 362(d)(2). Instead, section 362(d)(2) only demands an analysis of the *debtor's* equity in the property, which involves a calculation of all liens, not only those of the moving creditor. *See Stewart v. Gurley*, 745 F.2d 1194, 1196 (9th Cir.1984); *see also In re Garsal Realty, Inc.*, 98 B.R. 140, 153 (Bankr.N.D.N.Y.1989) (section 362(d)(2) looks to difference between property value and all encumbrances against it, while section 362(d)(1) measures property value against movant's lien and all those senior to it). In this case, notwithstanding the possible availability of the CD to help satisfy its debt to the Bank, New Era has no equity in the property since it owes more than the property is worth. This is the only inquiry that is necessary. *See In re Garsal*, 98 B.R. at 156 (equity cushion may be good for 362(d)(1) because of adequate protection, but it will not defeat a 362(d)(2) claim); *In re 6200 Ridge*, 69 B.R. at 842 n. 10 (dicta) (pledge of additional collateral irrelevant for calculating equity under 362(d)(2)). *But see In re Cardell*, 88 B.R. 627, 632 (Bankr.D.N.J.1988) (including value of additional collateral in calculation of equity); *cf. In re East–West Assocs.*, 106 B.R. 767, 774 (S.D.N.Y.1989) (even if 362(d)(2) satisfied, court's discretionary authority permits it to maintain stay if debtor able to prove adequate protection of creditor) (citing *In re St. Peter's School*, 16 B.R. 404, 408 (Bankr.S.D.N.Y.1982)); 1 W. Norton, *supra*, § 20.27, at 51 (notwithstanding creditor's entitlement to relief under section 362(d)(2), automatic stay need not be lifted if creditor adequately protected under 362(d)(1)).[5]

Having determined that New Era did not have equity in the property, we must next turn to the question of whether the property is necessary for an effective reorganization. An effective reorganization in this context requires the debtor to establish a "'reasonable possibility of a successful reorganization within a reasonable time.'" *United Sav. Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (quoting *In re Timbers of Inwood Forest Assocs.*, 808 F.2d 363, 376 (5th Cir. 1987)). Judge Schwartzberg concluded that there was no reasonable possibility of reorganization and we have not been presented with any proof suggesting that his view was incorrect. First, the debtor failed to comply with Judge Schwartzberg's directives to file schedules or lists of creditors. For that matter, only Morrison, whom Judge Schwartzberg did not even consider to be a partner, has appeared or filed anything in connection with these proceedings. None of the other partners has been heard from. Moreover, the entire way in which the property has been handled suggests that reorganization is impossible. The property has become run-down, rent has not been collected, and the tenants have even been forced to hire their own superintendent. It is unlikely, to say the least, that this debtor can "reorganize so as to operate the building." *In re Asheville Bldg. Assocs.*, 93 B.R. 913, 917 (Bankr.W. D.N.C.1988); *see also In re Garsal*, 98 B.R.

---

5. Even if the CD were to be included for purposes of calculating New Era's equity, since the definition of equity is the property value minus all outstanding liens, the claim by Blitz for indemnification would probably be included as an encumbrance on the property, which is the partnership's sole asset. While we recognize that there is some disagreement as to the present ownership of the CD, it is clear that Blitz deposited the funds and that the Bank has always maintained the account in his name. If it is Blitz's property, it is inconceivable that the CD would be included in calculating the debtor's equity, but excluded in calculating its debits. As we previously noted, a default judgment was entered in the Bank's interpleader action to establish ownership of the funds. *See supra* note 1.

at 155 (debtor's mismanagement to be considered in assessing likelihood of reorganization). Finally, while the Supreme Court requires that reorganization be in prospect, *United Sav. Ass'n*, 484 U.S. at 376, 108 S.Ct. at 632, all we have before us are Morrison's pipe dreams. Before Judge Schwartzberg, it was claimed that the building could be razed and replaced with condominiums. The court rejected this idea since it was unsupported by any proof. On appeal, Morrison modifies his claim to suggest that the debt can be refinanced to insure that the Bank will be paid. Additionally, the debtor contends that it received an offer of $1 million for the property. None of these contentions is supported by any documentary evidence whatsoever. Unrealistic hypotheticals such as these are the precise reason why the statute requires that the property be necessary to an *effective* reorganization. *See In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 902 (Bankr.D.Mass.1985). As an aside, we note that if these claims were more than mere dreams, the other partners would have swiftly emerged from the woodwork. For all these reasons, we agree that there is little chance for an effective reorganization. Both elements of section 362(d)(2) having been satisfied, the Bank is entitled to relief from the automatic stay.

■ Having resolved this issue in favor of the Bank, the question of 362(d)(1) and whether the creditor's interest is adequately protected need not be resolved. As we previously stated, the value of the CD must be considered in determining whether the Bank is adequately protected. However, even though the combined values of the CD and the property would satisfy the Bank's claim at the present time, we agree with Judge Schwartzberg that the debtor's neglect and mismanagement of the property creates a substantial risk that the property's value will drastically decrease. *See In re Asheville*, 93 B.R. at 917 (comparing same factors to determine adequacy of protection under 362(d)(1) as those considered for likelihood of reorganization under 362(d)(2)). Thus, even in conjunction with the CD, the Bank's interests are not adequately protected.

## III. CONCLUSION

For all the foregoing reasons, the decision and order of Judge Schwartzberg granting Bank Audi (U.S.A.) relief from the automatic stay is affirmed.

SO ORDERED.