NATIONSBANK OF VIRGINIA,
N.A., Appellant,

v.

DCI PUBLISHING OF ALEXANDRIA,
INC., Appellee.

Civ. A. No. 93–1071–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 10, 1993.

Thomas E. Cabaniss, Nathan B. Smith, McGuire, Woods, Battle & Boothe, McLean, VA, for appellant.

Robert O. Tyler, Thomas P. Gorman, Tyler, Bartl, Burke & Albert, Alexandria, VA, for appellee.

### MEMORANDUM OPINION

ELLIS, District Judge.

This bankruptcy appeal presents the question, as yet unresolved in this circuit, whether courts ruling on a § 362(d)(2) request for relief from the automatic stay may consider a creditor's "equity cushion"[1] relating to property other than the debtor's. In this case, the debtor's property, worth $900,000, se-

---

1. Equity cushion simply means the amount by which the security for a debt exceeds the amount of the debt. *See In re Sutton,* 904 F.2d 327, 329 (5th Cir.1990) ("'Equity' as used in section 362(d) portends the difference between the value of the subject property and the encumbrances against it.") To be sure, an equity cushion may vary with the market value of the properties involved. But as long as a cushion exists, a secured creditor is shielded from loss. *See In re*

*Mellor,* 734 F.2d 1396, 1400 n. 2 (9th Cir.1984). Typically, an equity cushion refers to the excess in the value of a property over the amount of the debt secured by that property. But in other circumstances, as here, the term equity cushion may refer to the difference between the amount of the debt and the value of all the creditor's collateral, including liens on property not owned by debtor.

cured debts to the creditor totalling $4.7 million. Thus, the debtor's property was not adequate security for the debts it secured and debtor plainly had no remaining equity in the property. Given this, § 362(d)(2) relief appears appropriate. Yet the Bankruptcy Court reached a different conclusion by considering the creditor's collateral in property other than that belonging to the debtor. This additional collateral, with a value of $5.2 million, was found by the Bankruptcy Court to be adequate to protect the creditor and to warrant denial of § 362(d)(2) relief. For the reasons that follow, the Court concludes that § 362(d)(2) excludes consideration of any equity cushion the creditor may have based on properties not owned by the debtor. Accordingly, the Bankruptcy Court's decision is reversed and the matter is remanded for further proceedings not inconsistent with this decision.

Also presented in this appeal is the question whether the Bankruptcy Court erred in excluding certain proffered rebuttal testimony. Because this is a matter committed to the sound discretion of the Bankruptcy Court, and because the record discloses no abuse of discretion, this decision by the Bankruptcy Court is affirmed.

### I

This case grows out of thirteen related corporate Chapter 11 bankruptcy cases. The debtors are members of a newspaper publishing business which publishes, among others, the *Alexandria Gazette.* They are variously obligated for millions of dollars in secured and unsecured claims. The specific debtor in issue, DCI Publishing Inc., is indebted to NationsBank of Virginia, NA, ("Bank") as a result of a 1989 $700,000 loan, which remains unpaid. This loan is secured by a first lien on a parcel of real estate owned by debtor on St. Asaph Street in the City of Alexandria (the "St. Asaph property").[2] This parcel is currently rented to unrelated businesses. The debtor also executed a second deed of trust on the St. Asaph property in favor of the Bank to secure an

other obligation. The parties stipulated that at the time of the hearing, the total indebtedness to the Bank secured by first and second deeds of trust on this parcel was $4.7 million. In addition to the $4.7 million in liens on the parcel, the Bank also had liens totalling $5.2 million on other property owned not by the debtor, but by entities who guaranteed the Bank's loan to the debtor.

Against this factual background, debtor filed a Chapter 11 petition for relief in January 1993. Thereafter, in April, the Bank filed a motion for relief from the automatic stay to permit the Bank to enforce its lien on the St. Asaph property. Importantly, the Bank sought relief solely under § 362(d)(2). Following hearings in which the parties presented evidence of the St. Asaph property's fair market value, the Bankruptcy Court found the parcel's value to be $900,000. Also, over the Bank's objection, debtor presented evidence at these hearings that the Bank's security for the debtor's loan was not limited to the liens on the St. Asaph property, but also included liens totalling $5.2 million on property not owned by debtor. As for the amount due on the loan secured by the first lien, parties stipulated at the outset that the amount of the debt was "not less than $770,000." Notwithstanding this stipulation, the Bank sought to show in its rebuttal case that the loan amount due was more than $900,000. Citing the stipulation, the Bankruptcy Court excluded this evidence.

In sum, the Bankruptcy Court found that the St. Asaph property was worth $900,000, but that the Bank's liens against it totalled $4.7 million. The Bankruptcy Court also found that the Bank's security for loans to the debtor included liens totalling $5.2 million on property owned by debtor's guarantors. On the basis of all these facts, the Bankruptcy Court denied the Bank's § 362(d)(2) request for relief from the stay. This appeal followed.

### II

■ Analysis properly begins with an examination of the controlling statute, 11

---

**2.** A second Alexandria parcel owned by debtor, located adjacent to the first on St. Asaph St., is occupied by the publishing business and is not at issue here as it is unencumbered by any Bank lien.

U.S.C. § 362(d). It provides, in pertinent part, that

> (d) On request of a party in interest, ... the court shall grant relief from the stay ...—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>>
>> (2) with respect to a stay of an act against property ..., if—
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization.

As subsections (1) and (2) of § 362(d) are in the disjunctive, they are quite unmistakably separate and independent bases for granting creditors relief from the automatic stay. Therefore, relief may be granted under either subsection without regard to the other subsection's requirements. And there is no doubt that the subsections differ markedly in their requirements.

Section 362(d)(1) has a relatively broad sweep, as it authorizes relief "for cause," which cause may include (but is not limited to) a creditor's lack of "adequate protection" with respect to an interest in property. The phrase "adequate protection" is defined in § 361 in sufficiently broad terms[3] that courts and commentators have uniformly concluded that such protection may be provided by a creditor's equity cushion stemming from liens on other property. Given that such an equity cushion may serve as adequate protection for the creditor, it follows, in that circumstance, that the adequately protected creditor would not be entitled to relief from the automatic stay. *See, e.g., In re Cardell,* 88 B.R. 627, 632 (Bankr.D.N.J.1988); *In re*

*Diaconx Corp.,* 69 B.R. 333, 339 (Bankr. E.D.Pa.1987).

The same result does not obtain under § 362(d)(2). This subsection is narrower in scope; it contains no broad "for cause" language, nor is there any reference to "adequate protection" for the creditor. Rather, its plain language sets forth two simple requirements that foreclose consideration of any equity cushion creditor may have based on liens on other property. Thus, relief under § 362(d)(2) "shall" be granted where (i) the "debtor has no equity in *such* property" and (ii) the property is not essential to a reorganization. "*Such* property" in subsection (d)(2) plainly refers to the debtor's property that secures the debt in issue. In this context, "such property" is the St. Asaph property. And the record facts in this case establish beyond dispute that the debtor had no equity in the St. Asaph property, given that it is worth only $900,000, and the Bank's liens on it total $4.7 million. *See In re Leonard,* 151 B.R. 639, 643 (Bankr.N.D.N.Y. 1992) ("For purposes of § 362(d)(2)(A) a debtor lacks equity in a particular piece of property when the sum total of the claims secured by the property exceed its value.") While the Bank's additional debt collateral, namely the liens on other property totalling $5.2 million, might be relevant under § 362(d)(1), that collateral is irrelevant to the § 362(d)(2) inquiry. Only the debtor's equity in the property is relevant under § 362(d)(2). *See In re New Era Co.,* 125 B.R. 725, 728–29 (S.D.N.Y.1991); *In re Leonard,* 151 B.R. 639, 643 (Bankr.N.D.N.Y.1992); *In re Garsal Realty, Inc.,* 98 B.R. 140, 156 (Bankr.N.D.N.Y. 1989); *In re Diplomat Electronics Corp.,* 82 B.R. 688, 692 (Bankr.S.D.N.Y.1988); *see also In re 6200 Ridge, Inc.,* 69 B.R. 837, 842 n. 10

---

**3.** Section 361 provides, as follows:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensate allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

(Bankr.E.D.Pa.1987).[4]

Congressional intent with respect to § 362(d) is as clear as the express language of that provision: If the liens on the subject property exceed its value and if the property is not essential to the reorganization process, there is no justification for continuing to deprive the secured creditor of its bargained-for right to foreclose on the property under state law and recover its debt. Had Congress intended for bankruptcy courts to consider other collateral owned by other entities even when the requirements of subsection (d)(2) are satisfied, that intent could easily have been expressed by, for example, adding the terms "adequate protection" to the subsection.

*In re New Era Co.,* 125 B.R. 725 (S.D.N.Y. 1991) is a lucid and persuasive illustration of this view of § 362(d)(2). There, a bankruptcy court granted, and a district court affirmed, § 362(d)(2) relief from a stay on the basis of a debtor's lack of equity. The property in issue was valued at $650,000 and the debt was approximately $830,000. There, as here, the creditor had security beyond the property in issue, namely a $500,000 certificate of deposit. And there, as here, this additional security or equity cushion was not relevant. In the words of the *New Era* court,

> notwithstanding the possible availability of the CD to help satisfy its debt to the Bank, New Era has no equity in the property since it owes more than the property is worth. This is the only inquiry that is necessary.

> \* \* \* \* \* \*

"[w]hile the concepts of equity cushions and adequate protection are relevant for section 362(d)(1), where one looks to the adequate protection of the creditor, there

is no mention of these concepts in section 362(d)(2). Instead, section 362(d)(2) only demands an analysis of the *debtor's* equity in the property...." (emphasis in original).

*New Era,* 125 B.R. at 729.

 Debtor argues that even if *New Era* correctly construes § 362(d)(2), the Bankruptcy Court in this matter still had authority under 11 U.S.C. § 105 to deny stay relief. In the debtor's view, this § 105 authority is a necessary consequence of a Bankruptcy Court's broad equitable powers. This argument misapprehends § 105, giving the provision the power to erase the whole Bankruptcy Code. It has no such power. Section 105 recognizes a bankruptcy court's broad equitable powers to take whatever steps may be "necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Nothing in § 105 authorizes or invites court action in contravention of the Code. And a bankruptcy court plainly contravenes the Code when it considers a creditor's equity cushion under § 362(d)(2).

In summary, a creditor's equity cushion stemming from other collateral or liens on property not owned by debtor is not relevant under § 362(d)(2). The sole focus of the § 362(d)(2) is the debtor's equity in the property that is the subject of the stay. If the debtor has no equity in the property, as was established here, and further, if the creditor also shows that the property is not essential to an effective reorganization, which does not appear to have been decided here, then stay relief is mandated. Because the Bankruptcy Court did not follow this reading of § 362(d)(2), the matter is remanded to allow the Bankruptcy Court to consider and decide whether the St. Asaph property is essential to debtor's reorganization. If it is not, automatic stay relief should issue.

---

4. Debtor contends its cited authority is contrary. *See In re Colonial Ctr., Inc.,* 156 B.R. 452 (Bankr. E.D.Pa.1993); *In re East–West Associates,* 106 B.R. 767 (S.D.N.Y.1989). Closely read, this authority is unpersuasive, if not also distinguishable. At most, these decisions suggest that because § 362(d) stay relief may be granted by "modifying or conditioning" the stay, it follows that § 362(d) stay relief therefore need not necessarily entail a complete lifting of the stay even if the § 362(d)(2) requirements are satisfied.

Whatever the merit of these decisions, they are irrelevant here as the Bankruptcy Court did not modify or condition the stay relief; instead the Bankruptcy Court flatly denied it. Moreover, these decisions are unpersuasive to the extent that they are taken to support the argument that the power to grant relief from the stay by conditioning the stay implies a broad power to deny relief altogether even where the requirements of § 362(d)(2) are met.

■ The Bank's cross appeal stems from the Bankruptcy Court's exclusion of the Bank's rebuttal evidence showing the value of the debt to be more than $900,000. This exclusion of evidence was based, it appears, on the fact that the parties had earlier stipulated that amount due on the loan was at least $770,000. It is well established that "absent a clear showing of abuse of discretion, a trial court's discretion as to evidentiary rulings will not be disturbed on appeal." *In re Cash Currency Exchange*, 93 B.R. 618, 621 (N.D.Ill.1988); *see also In re Scarlata*, 127 B.R. 1004 (N.D.Ill.1991); *In re Karelin*, 109 B.R. 943 (Bankr. 9th Cir.1990). Because the record does not disclose any evidence that the Bankruptcy Court's exclusion of this evidence constituted an abuse of discretion, this decision by the Bankruptcy Court is affirmed.

The Clerk is directed to send copies of this Memorandum Opinion to counsel of record and to the Bankruptcy Court.

An appropriate order will issue.