**In re Clyde Eldon STEFFENS, and LaDona Louise Steffens, Debtors.**

**Bank One, Colorado, N.A., Movant,**

**v.**

**Clyde Eldon Steffens and LaDona Louise Steffens, Respondents.**

**No. 01–25624 SBB.**

United States Bankruptcy Court, D. Colorado.

March 22, 2002.

Thomas Kearns, Kutner Miller Kearns, P.C., Denver, CO, for debtors.

Steven Abelman, Cage Williams Abelman & Layden, P.C., Denver, CO, for Bank One Colorado, N.A.

## MEMORANDUM OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion for Relief from Stay filed December 14, 2001 by the secured creditor Bank One, Colorado, N.A., ("Bank One"), seeking for relief from stay to (among other things) judicially foreclose its deed of trust on two parcels of Debtors' real property. The matter was taken under advisement by the Court at the conclusion of closing arguments at the final hearing on February 7, 2002. Having heard the testimony of the witnesses and the arguments of counsel, and having reviewed the evidence submitted, the file in this matter and the relevant case law, the Court is now prepared to rule on the Motion for Relief from Stay.

### Issues Presented and Conclusion

There are several issues presented by this Motion for Relief From Stay, most of which are fairly routine, and one of which is a matter of first impression. The routine issues are: (1) Whether Bank One is adequately protected; (2) Whether the Debtors have equity in the property; and (3) Whether the property is necessary for an effective reorganization. The fourth, more unusual issue here, is to determine the value of the property at issue for the purposes of determining adequate protection and the Debtors' equity. That task is complicated, however, by the fact that there are three contiguous parcels of land owned by the Debtors, only two of which are subject to Bank One's lien. This Court must, therefore, examine (A) whether *all three parcels* must be treated as a single unit, largely because Debtors' nascent plan of reorganization depends on all three parcels, or (B) whether *only Parcels 1 and 2* (Bank One's collateral) should be treated separately for the purposes of this Motion.

There is no precedent on point on the issue of whether the three parcels of land should be treated as a single unit for Debtors' plan and development purposes, or in two units, Parcels 1 and 2, which serve as Bank One's collateral, and Parcel 3, which does not serve as Bank One's collateral.

For the reasons set forth below, Bank One's Motion for Relief from Stay for lack of adequate protection pursuant to § 362(d)(1) is DENIED. Bank One's request for relief from stay pursuant to § 362(d)(2) is GRANTED. The Debtors have little or no equity in the property, and the Debtors' have failed to meet their burden of proving that the property is necessary for an effective reorganization.

### Facts

The following facts are undisputed:

1. The Debtors, Clyde and LaDona Steffens ("Debtors" or "Steffens"), filed this Chapter 11 case on October 29, 2001.

2. The Debtors are the owners of approximately 196 acres of partially irrigated ranch land in Montrose County, Colorado, located about seven miles northwest of downtown Montrose. The Debtors live on the property and operate a small horse ranching operation which generates net income of around $200 per month. The 196 acres consists of three parcels, which are referred to by the parties and herein as Parcels 1, 2 and 3.

3. The Steffens' home and various outbuildings are located on Parcel 1. Parcel 1

is the southernmost parcel, contains 40 acres, and has access from adjoining property across a small easement.

4. Parcel 2 (80 acres) is directly north of Parcel 1 and is bounded on the south by Parcel 1. Parcel 2 is partially irrigated in areas used to grow feed grains for the horse operation. Otherwise, it is unimproved land. Access to Parcel 2 can be had through Parcel 1.

5. Parcel 3 (76 acres) east of and bounded by Parcel 2. Parcel 3 is also partially irrigated in areas used to grow feed grain. The balance is unimproved land. Parcel 3 is *landlocked* and can only be reached by going through Parcels 1 and 2.[1]

6. The approximate amount and priority of the liens against the various parcels are as follows:

| Creditor | Lien Amount | Parcels 1 & 2 | Parcel 3 |
|---|---|---|---|
| Mountain Plains FCS | $230,000.00 | 1st | 2nd |
| Bank One (Movant) | $285,000.00 | 2nd | — |
| Region 10 LEAP | $340,000.00 | 3rd | — |
| Montrose Federal CU | $ 25,000.00 | — | 1st |

7. The Debtors' main source of income is from Automation Industries Corp., which is owned by the Debtor-wife. Debtor-husband is the President of Automation Industries. Automation Industries makes and sells machinery to the Gypsum board and inorganic panel markets.

8. Automation Industries has been making monthly interest payments to Mountain Plains FCS (adequate protection payments) on the Debtors' behalf since January.

9. The Debtors and Bank One have been involved in extensive state court litigation related to the amount and validity of Bank One's loan. A judgment in favor of Bank One in such litigation is currently on appeal.

10. The Debtors' testified that their plan now being formulated provides for (a) an initial try to cash flow plan payments out of operations and/or rental of certain city property owned by Debtors, but if that is not feasible, (b) to subdivide and sell Parcels 2 and 3 as three different portions, each of which will traverse and include parts of Parcels 2 and 3. Remember: Parcel 2 serves as Bank One's collateral; Parcel 3 does not.

*The Motion for Relief From Stay*

On December 14, 2001, Bank One filed a Motion for Relief from Stay seeking, in part, relief from stay to foreclose its second deed of trust on Parcels 1 and 2. The Motion alleges that Bank One is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (d)(2), asserting that it is not adequately protected, that the Debtors don't have any equity in the property, and that the property is not necessary for an effective reorganization. Lack of adequate protection is alleged based on failure of the Debtors to pay the holder of the first deed of trust, failure to pay property taxes, and potential environmental contamination, which the Bank was unable to investigate due to the Debtors' refusal to tie up their dogs.

The Debtors filed a Response to Motion for Relief from Stay on January 3, 2002.

---

**1.** For purposes of being a bit more graphic, and for better understanding of the relationship between Parcels 1 and 2, on the one hand, and 3, on the other hand, and the Debtors' plans for development of the three parcels, they can be visualized as being in the shape of a "P"; Parcel 1 is the trunk or the stem and is ½ the size of Parcels 2 and 3, which are roughly comparable in size and form the body of the "P".

The Response alleges that there is substantial equity in the property for the benefit of the estate. The Debtors allege that the property must be treated as a whole, or single unit (in other words, Parcels 1, 2 and 3), even though Bank One's debt is only secured by a portion of the property (Parcels 1 and 2), and that Bank One is adequately protected by an equity cushion. The Response also argues that since Bank One is in second position, only the first and second liens should be considered when determining adequate protection.[2] Finally, the Response alleges that the property is necessary for an effective reorganization because the funding of the Debtors' intended plan of reorganization will be based, in part, on the potential orderly sale of one or more of the three contiguous parcels. Debtors' testimony and evidence presented at the hearing (Exhibit U), while not completely clear, apparently contemplates selling Parcels 2 and 3 (and perhaps part of Parcel 1) in some sort of configuration comprising three different sales.

■ Section 362(g) provides that the party requesting relief has the burden of proving a lack of equity and the debtor has the burden of proof on all other issues in relief from stay matters. As was noted by the court in In re Anthem Communities, 267 B.R. 867 (Bankr.D.Colo.2001), however-er, the burden is not so simple to apply to a claim under § 362(d)(1) where, as here, "cause" is claimed to be lack of an equity cushion to adequately protect the creditor. As did the court in Anthem, 267 B.R. at 871, which denied a creditor's motion for relief from stay based on the creditor's failure to satisfy its initial burden of production, I find that the initial burden of going forward on lack of adequate protection is on Bank One, while the ultimate burden of persuasion on the issue of adequate protection rests on the Debtors.

A preliminary hearing on this matter was held on January 10, 2002. At the conclusion of the hearing, the Court set the matter for final hearing and modified the automatic stay as follows:

(a) Bank One was allowed to proceed forward to seek a final determination in the appeal of the state court judgment pending before the Colorado Court of Appeals.

(b) The Debtors were required to: (1) file a plan and disclosure statement within the exclusive period (by February 26, 2002); (2) escrow 2002 taxes in an account not exclusively controlled by them; (3) amend their schedules to reflect any taxes due or in arrears on the real property in question; (4) make arrangements to cure and make payments on the first deed of trust on or before 1/31/02; (5) provide

---

**2.** It appears from the Response that the Debtors seek to have the lien calculation made for adequate protection purposes under § 362(d)(1) also made applicable to the issue of the Debtors' equity in the property under § 362(d)(2). I would note that the Debtors' assertion in this regard is contrary to the majority rule under case law. Although it is true that only the amounts of the lien in question and those senior to it are relevant in determining adequate protection pursuant to § 362(d)(1), the majority of courts considering the issue hold that all of the liens against property must be taken into account to determine the Debtors' equity in the property for purposes of § 362(d)(2). See, e.g., In re Sutton, 904 F.2d 327, 329 (5th Cir.1990); Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir.1984); In re New Era Co., 125 B.R. 725, 729 (S.D.N.Y.1991); In re Hanley, 102 B.R. 36, 37 (W.D.Pa.1989); In re Egea, 167 B.R. 226, 230 (Bankr.D.Kan.1994). The majority position is consistent with a plain reading of the language of § 362(d)(2)(A), which focuses on the debtor's equity in the property. Ultimately, whether a debtor has equity in property can only be determined by subtracting all of the obligations secured by such property from the value thereof.

proof of insurance listing Bank One as a loss payee; (6) cooperate to allow Bank One to conduct an environmental audit on the property; and (7) cooperate in discovery on the instant Motion.

The final evidentiary hearing in this matter was held on February 7, 2002.

### Discussion

The parties remain sharply divided on two issues—(1) the value of the property and (2) whether all three contiguous parcels should be treated as a whole for purposes of valuation and determining whether relief from stay should be granted.

Both parties presented appraisal testimony at the final hearing. Mr. Ballantyne, Bank One's appraiser, set the value of Parcels 1 and 2, including improvements, at $585,000. The appraisal report submitted by Mr. Ballantyne indicates that the value is based primarily on the house, barn and 40 acres of Parcel 1, with Parcel 2 accounting for only $125,000 of the value advanced (a value of approximately $1,562/ acre). His report states "I don't believe the 80 acres [Parcel 2] contributes a great deal to the value of the house and barn [on Parcel 1], and suggest it should be offered separately if the property is put up for sale." Mr. Ballantyne did *not* appraise Parcel 3. Applying value per acre applied to Parcel 2 produces a value of $ 118,-712.00 for Parcel 3 and a combined value for Parcels 1, 2 and 3 of approximately $703,300.00

In accordance with the Debtors' contention that all three parcels must, in equity, be treated as a whole in this case, Mr. Peterson, the Debtors' appraiser, ap-praised the property (Parcels 1, 2 *and* 3) at $1,030,000. Mr. Peterson's appraisal indicates a land value of $3,900 per acre, which translates to a value for Parcels 1 and 2, with improvements, of approximately $735,000 (120 acres @ $3,900/acre + $267,253 for the improvements). In addition, it was Mr. Peterson's uncontroverted testimony that the value of Parcel 3 will decrease significantly (perhaps by as much as 50%), if Bank One is allowed to complete its judicial foreclosure on Parcels 1 and 2. This decrease in value springs directly from Parcel 3's "landlocked" location.

Able cross-examination of both appraisers reveals that neither value is probably the correct one, or particularly reliable, for the purposes of the instant Motion. Bank One's appraiser valued the property as residential, not as a ranch. The Debtors' appraiser valued the property on the basis of the "highest and best use", which is asserted to be development of the property into 35–40 acre home sites. The testimony presented indicates (and the admissions of the Debtors' counsel in closing argument confirm) that the Debtors have taken no concrete steps to either verify the legality of, to estimate costs attendant to, or to begin to subdivide the property into the type of smaller home sites contemplated by their appraiser.[3] Neither side proffered any testimony or documentary evidence of the value based on the Debtors' current and projected use of the property as a horse ranch and potential sales of some or all of the parcels as needed to provide additional funds for a plan of reorganization. Accordingly, the Court con-

---

**3.** The Debtors did file a proposed Disclosure Statement on February 26, 2002, but did *not* file a plan simultaneously. The Court notes that the description of the plan contained in the Disclosure Statement reveals only that one or more parcels may be sold if the income from other sources (Steffens' salary and draws, rental income) are not sufficient. There is no mention of any intention to subdivide Parcels 2 and 3 into 35–40 acre home sites traversing both parcels in the manner suggested by Debtors' appraiser at the February 7 hearing.

cludes that the proper valuation of the property for the purposes of the instant Motion is probably somewhere between the values advanced by the parties' respective appraisers. As will be discussed later, however, pinpointing the actual value of the three parcels is unnecessary as the Debtors have no equity regardless of where between the two disparate appraisals the actual value lies.

The Debtors argue that the property, their residence, is necessary to an effective reorganization. Extensive testimony was presented regarding the Debtors' ability to reorganize, and the need for the property as a whole for that reorganization. The payments to creditors under the prospective plan outlined by the Debtors, however, are based on (1) the Debtor-husband's earnings from Ms. Steffen's wholly owned small business, Automation Industries, plus (2) anticipated rent from a separate piece of business property (currently the subject of separate state court litigation between the Debtors' and Lynnda Hess, a former business associate), and (3) additional monetary contributions by Mrs. Steffens' corporation, Automation Industries. The plan purportedly will also provide for the sale of some or all of the three parcels, if necessary, as a back-up method for funding the payments under the plan.[4]

The positions taken by the parties in this matter are diametrically opposed. Bank One argues that Parcel 3 is irrelevant to the inquiry here, because its lien is only on Parcels 1 and 2. The Debtors argue that this Court must, in equity, treat all three parcels as a single unit. This argument is made even more appealing by Mr. Peterson's uncontroverted testimony regarding the negative effect on the value of Parcel 3 of a foreclosure or sale of only

Parcels 1 and 2, which will, in turn, have a significantly negative impact on the Debtors, the Debtors' prospective plan, and the other creditors of the estate. Bank One argues that the property is not necessary for an effective reorganization since the anticipated plan is based on the income from Debtors' other business and property, and the three parcels serve only as a "back-up" plan. Debtors argue that the property is necessary for an effective reorganization because subdividing all three contiguous parcels is necessary in order to reap the highest and best price for the success of the prospective plan.

### Application of the Law to the Facts of this Case

For the reasons set forth below, the Court finds that Bank One is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2). Regardless of which party's valuation is adopted, it appears that the Debtors do not have any equity in the property. In addition, the Debtors simply have not met their burden of demonstrating that the property, all three parcels, is "necessary for an effective reorganization that is in prospect." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

### A. Adequate Protection—11 U.S.C. § 362(d)(1)

As an initial matter, the Court finds that Bank One is not entitled to relief from stay under § 362(d)(1). Its interest in the property is adequately protected, at least for the time being.

■ Section 362(d)(1) specifies that relief from stay may be granted for "cause, including the lack of adequate protection

---

4. See footnote 3 discussing the Disclosure Statement subsequently filed by the Debtors, and their failure to file a plan.

of an interest in property of such party in interest. . . ." The Court's research indicates that there are no reported cases on the issue of whether Parcels 1, 2 and 3 should be treated as a single piece for the purposes of a § 362(d) dispute. Certainly, the Debtors' apparent use of all three parcels as a single unit coupled with Mr. Peterson's testimony of the negative impact on the value of Parcel 3 to the estate and other creditors of a sale of Parcels 1 and 2, makes such a position attractive. On the other hand, Debtors admit that they acquired the property separately, and while the debt to Mountain Plains FCS is secured by all three parcels, it is undisputed that Bank One's debt is only secured by Parcels 1 and 2. For the purposes of Debtors' as yet un-filed plan it may be appropriate to treat all three parcels as a single unit. For the purposes of determining adequate protection of Bank One's interest, however, this Court concludes that it can only look to Bank One's actual collateral at issue—Parcels 1 and 2.

■ Regardless of which appraiser's valuation is accepted by the Court, Bank One is adequately protected at the present time by the equity cushion. For the purposes of determining adequate protection, only the amount of Bank One's lien and the senior lien of Mountain Plains FCS are relevant. *See,* e.g., *Matter of Mendoza,* 111 F.3d 1264, 1272 (5th Cir.1997); *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197, 207 (3rd Cir.1995). These two liens total approximately $515,000, yielding an equity cushion of at least $70,000 (more than 24%), even under Mr. Ballantyne's low value of $585,000. Mr. Peterson's value yields an even greater equity cushion in favor of Bank One ($220,000 or 77%). Thus, Bank One's interest in Parcels 1 and 2 is adequately protected at the present time.[5]

### B. Lack of Equity and Necessity for an Effective Reorganization—11 U.S.C. § 362(d)(2)

Bank One is entitled to relief from stay pursuant to § 362(d)(2), as the Debtors have no equity in the property and the property is *not necessary* for an effective reorganization. 11 U.S.C. § 362(d)(2) allows for relief from stay if:

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization

Pursuant to § 362(g), Bank One has the burden of proof on the issue of the Debtors' equity in property and the Debtor has the burden of proof on all other issues.

■ As is discussed above (fn.2), all of the liens against the property must be considered in determining whether the Debtors have equity in the property under § 362(d)(2)(A). *See also, Indian Palms Associates, Ltd.,* 61 F.3d at 207; *Pistole v. Mellor (In re Mellor),* 734 F.2d 1396, 1400 n. 2 (9th Cir.1984). Although Bank One's appraised value was not particularly reliable, neither was the Debtors'; the former ($703,000) being too low, and the latter ($1,030,000) being too high. Based on the evidence presented and the current economic conditions, a reasonable fair market

---

**5.** The Debtors provided proof of ongoing interest payments to the holder of the first deed of trust at the final hearing. In response to questions of the Court, Bank One's Counsel admitted that so long as such payments are being made, Bank One is not being put at increasing risk, and that the only danger lies in the passage of time during a redemption period or if the Debtor ceases making adequate protection payments to the first lien holder. Given the size of the equity cushion, only the lien holder who is junior to Bank One is currently at risk. That lien holder did not file any pleadings or otherwise seek to participate in the proceedings on the instant motion.

value for Parcels 1, 2 and 3 together is no more than $900,000.

 Accordingly, the Debtors do not have any equity in the property regardless of whether the three parcels are treated as a single property for the purposes of this Motion. The first, second and third liens against Parcels 1 and 2 total $855,000, while the highest appraisal of those two parcels (Debtor's appraisal) is $735,000.00. The liens against Parcels 1, 2 and 3 total $880,000, only $20,000 less than the value estimated by this Court. Because the contemplated use of the property under Debtors' nebulous, not yet produced "plan" is the sale of some or all of the parcels, costs of sale must be considered as well. Even a meager 5% cost of sale will wipe out any potential equity available to the estate.

Lack of equity is not necessarily fatal under § 362(d)(2) if the debtor can prove that the property at issue is necessary to an effective reorganization. *See,* e.g., *Matter of Baskerville,* 93 B.R. 251 (D.Colo.1988). In the present case, the Debtors have failed to prove that Parcels 1 and 2 are necessary to an effective reorganization. *Baskerville,* 93 B.R. at 253 (appropriate inquiry under § 362(d)(2) is whether the property is "necessary" to an "effective reorganization that is in prospect"). The Debtors strongly asserted, in both testimony and argument, that they have sufficient income from salaries, draws, and rental income to make payments under a plan. Although the Debtors live on Parcel 1, the only proposed use of Parcels 1, 2 and 3 to fund an eventual plan is as a back-up, through the sale of one or more of the parcels. While the ability to retain Parcels 1 and 2 would certainly bolster both the value of Parcel 3 and the possibility that Debtors' speculative plan will ultimately succeed, this is insufficient to prove necessity.

IT IS THEREFORE ORDERED that Bank One's Motion for Relief from Stay filed December 14, 2001 shall be and is hereby GRANTED pursuant to 11 U.S.C. § 362(d)(2).

IT IS FURTHER ORDERED that the Clerk shall mail a copy of this Order to all interested parties.